ENGHAUSER MANUFACTURING COMPANY, APPELLANT, *v.* ERIKSSON ENGINEERING LTD.; CITY OF LEBANON, APPELLEE.

[Cite as Enghauser Mfg. Co. *v.* Eriksson Engineering Ltd. (1983), 6 Ohio St. 3d 31.]

32

(No. 82-810—Decided July 20, 1983.)

*Mr. James E. Sheets,* for appellant.

*Mr. J. William Duning, Messrs. Lindhorst & Dreidame* and *Mr. William M. Cussen,* for appellee.

WILLIAM B. BROWN, J. The case presents this court with the question of whether the doctrine of governmental immunity from tort liability for municipalities should be sustained in Ohio. With the limitations set forth in this opinion, this court overrules *Dayton* v. *Pease* (1854), 4 Ohio St. 80, wherein the sovereign immunity doctrine was extended to encompass local governmental units, and all other decisions which support this doctrine, and holds that immunity from tort liability heretofore judicially conferred upon

local governmental units is hereby abrogated. Henceforth, so far as municipal governmental responsibility for torts is concerned, the rule is liability—the exception is immunity.

The abolition of this doctrine in Ohio is long overdue. There are probably few tenets of American jurisprudence which have been so unanimously berated as the governmental immunity doctrine. It has been the subject of thousands of learned dissertations; the highest courts of numerous other states, text writers, and law review writers have all been unusually articulate in castigating the existing rule. A quick review of Ohio case law reveals that this court has many times had the matter under consideration.

In light of the comprehensive nature of discussion on this subject, there is little new this court can now add. But because this court is charting a new course in Ohio jurisprudence with this decision, a brief summary of the nature of governmental immunity is appropriate.

Various reasons have been assigned for perpetuation of the doctrine of municipal immunity from liability for torts. The reason adduced most frequently to support the doctrine is that "* * * if there is to be a departure from the rule the policy should be declared and the extent of liability fixed by the legislature." *Conway* v. *Humbert* (1966), 82 S.D. 317, 323, 145 N.W. 2d 524. This type of argument begs the question of the desirability of the doctrine and relegates the whole problem to a discussion of who should change the doctrine.

In Ohio, there is no doubt that the municipal immunity doctrine was judicially created. See *State* v. *Franklin Bank of Columbus* (1840), 10 Ohio 91; *Western College of Homeopathic Medicine* v. *Cleveland* (1861), 12 Ohio St. 375; and *Thacker* v. *Bd. of Trustees of Ohio State Univ.* (1973), 35 Ohio St. 2d 49, 67-68 [64 O.O.2d 28] (Justice William B. Brown, dissenting). Accord *Muskopf* v. *Corning Hospital Dist.* (1961), 55 Cal. 2d 211, 218, 359 P. 2d 457. Inasmuch as it is a judicially created doctrine, it may be judicially abolished. (See *Sears* v. *Cincinnati* [1972], 31 Ohio St. 2d 157, 161-162 [60 O.O.2d 113]; *Muskopf* v. *Corning Hospital Dist., supra; Molitor* v. *Kaneland Community Unit Dist. No. 302* [1959], 18 Ill. 2d 11, 25, 163 N.E. 2d 89.)

Having established that this doctrine is a creature of the courts, this court not only has the power but the duty and responsibility to evaluate the doctrine of municipal immunity in light of reason, logic, and the actions, functions and duties of a municipality in the twentieth century in order to determine whether it should adhere to its own rule of municipal tort immunity.

The courts which have adhered to the rule cite few reasons for that position, other than the longevity of the doctrine and its firmly established position. It is commonly accepted that the doctrine by which municipal corporations are held immune from liability in tort originated with the case of *Russell* v. *Men of Devon* (1788), 100 Eng. Rep. 359, 362, wherein the immunity was supported because (1) since the group was unincorporated, there was no fund from which the judgment could be paid and (2) "it is better that an individual should sustain an injury than that the public should suffer an inconvenience."

As Justice Traynor stated in *Muskopf, supra,* at 216, "[i]f the reasons for *Russell* v. *Men of Devon* and the rule of county or local district immunity ever had any substance they have none today."

In scarifying the second justification for immunity as set forth in *Russell, supra,* the Supreme Court of New Hampshire stated in *Merrill* v. *Manchester* (1975), 114 N.H. 722, 724-725, 332 A. 2d 378, 380, as follows:

"That an individual injured by the negligence of the employees of a municipal corporation should bear his loss himself as advocated in the *Russell* case, *supra,* instead of having it borne by the public treasury to which he and all other citizens contribute, offends the basic principles of equality of burdens and of elementary justice. *Becker* v. *Beaudoin,* 106 R.I. 562, 568, 261 A. 2d 896, 900 (1970); *Molitor* v. *Kaneland Community Unit Dist. No. 302,* 18 Ill. 2d 11, 21, 163 N.E. 2d 89, 93 (1959). It is foreign to the spirit of our constitutional guarantee that every subject is entitled to a legal remedy for injuries he may receive in his person or property. * * * It is also contrary to the basic concept of the law of torts that liability follows negligence and that individual corporations are responsible for·the negligence of their agents, servants and employees in the course of their employment. *Spencer* v. *General Hosp.,* 425 F. 2d 479, 487 (D. Cir. 1969) (Wright, J., concurring)."

It would indeed be a sad commentary on our concept of justice if this court continued to endorse the belief that an individual should sustain an injury rather than the municipality be inconvenienced.

The other justification for immunity set forth in *Russell* has likewise lost its validity and vitality. The widespread availability and use of insurance or other modern funding methods render an argument based on economics invalid. Further, there is no empirical data to support the fear that governmental functions would be curtailed as a result of imposing liability for tortious conduct. *Ayala* v. *Philadelphia Bd. of Pub. Edn.* (1973), 453 Pa. 584, 596, 305 A. 2d 877; Note (1973), 26 U. Fla. L. Rev. 89, 90.

Even though the reasons behind the municipal immunity doctrine have vanished and its construction renders an injustice to all people wronged by the local governmental unit or its agents, it has been suggested that the rule be retained because of the principle of *stare decisis.*

As to the fundamental nature and the importance of *stare decisis,* there is no doubt. It lies at the heart of the common law. By this rule, our society has preserved the best of the wisdom and the morality of past ages. Wisdom and morality, however, are not immutable universals of the scholastic philosophers; they are to be modified by each new generation.

When, however, a rule of law is judge-made, and the reasons for its use have vanished, the court should not perpetuate it until petrification. A rule that has outlived its usefulness should be changed. Greater justification is needed for a rule of law than that it has been part of the common law for a few hundred years.

The judicial conscience must no longer permit us to tolerate a principle of human behavior which, out of hand, denies the injured, the maimed and

representatives of the deceased a right of action against a wrongdoing simply because the wrongdoer is an employee or agent of a municipality. If municipalities are to expose the people and their property to negligent acts, then they must expect to respond to suit. Municipal corporations in Ohio should no longer receive protection from a doctrine whose only claim to judicial integrity is that it is ancient.

This court's abrogation of municipal immunity does not mean that a municipal entity is liable for all harm that results from its activities; it is only to those harms which are torts that municipalities may now be held liable. This decision merely subjects municipal entities to the same rules as private persons or corporations if a duty has been violated and a tort has been committed.

Nor will a municipality be subject to liability where a statute provides for immunity. See, *e.g., Haverlack* v. *Portage Homes, Inc.* (1983), 2 Ohio St. 3d 26. Cf. *Dougherty* v. *Torrence* (1982), 2 Ohio St. 3d 69 and *King* v. *Williams* (1983), 5 Ohio St. 3d 137.

Most importantly, this decision should not be interpreted as abolishing immunity to those certain acts which go to the essence of governing. Accord *Kitto* v. *Minot Park Dist.* (N.D. 1974), 224 N.W. 2d 795; *Parrish* v. *Pitts* (1968), 244 Ark. 1239, 429 S.W. 2d 45; *Spanel* v. *Mounds View School District No. 621* (1962), 264 Minn. 279, 118 N.W. 2d 795. This court does not contemplate that the essential acts of governmental decision-making be the subject of judicial second-guessing or harassment by the actual or potential threat of litigation. The appropriate dividing line falls between those functions which rest on the exercise of judgment and discretion and represent planning and policy-making and those functions which involve the implementation and execution of such governmental policy or planning.

This is indeed proper, for as the Supreme Judicial Court of Massachusetts stated in *Whitney* v. *Worcester* (1977), 373 Mass. 208, 218-219, 366 N.E. 2d 1210:

"When the particular conduct which caused the injury is one characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability. 'To inquire into such decisions in a tort suit might "jeopardiz[e] the quality and efficiency of government itself," and endanger the creative exercise of political discretion and judgment through "the inhibiting influence of potential legal liability asserted with the advantage of hindsight." ' *Spencer* v. *General Hosp.*, 425 F. 2d 479, 488 (D.C. Cir. 1969) (Wright, J., concurring), quoting from *Elgin* v. *District of Columbia*, 337 F. 2d 152, 154-155 (D.C. Cir. 1964). On the other hand, when the particular conduct claimed to be tortious involves rather the carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to private individuals or entities and the governmental entity in question held liable for the injuries resulting from such acts."

Accordingly, this court holds that no tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function, or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. *Hurley* v. *Hudson* (1972), 112 N.H. 365, 368-369, 296 A. 2d 905; *Spencer* v. *General Hosp. of D.C., supra; Johnson* v. *State* (1968), 69 Cal. 2d 782, 73 Cal. Rptr. 240, 447 P. 2d 352; *Smith* v. *Cooper* (1970), 256 Ore. 485, 475 P. 2d 78; Davis, Administrative Law Text (1972), Section 25.03, at 473-479; Restatement of the Law 2d, Torts, Section 895C, Comment *g*, at 410; see *Hansen* v. *St. Paul* (1974), 298 Minn. 205, 211-212, 214 N.W. 2d 346. However, once the policy has been made to engage in a certain activity or function, municipalities will be held liable, the same as private corporations and persons, for the negligence of their employees in the performance of the activities. Accord *Superior Uptown* v. *Cleveland* (1974), 39 Ohio St. 2d 36, 40-41 [68 O.O.2d 21].

Appellant also raises two other issues, both of which challenge the application of the doctrine of sovereign immunity to the facts of this case.[2] Since sovereign immunity is no longer a viable defense for a municipality in a suit alleging damages for negligence in the performance or nonperformance of a municipality's duties, this court need not consider these issues and expresses no opinion thereon. Based on this record, anything this court might say with respect to these issues would be largely advisory, and "* * * it is well-settled that this court does not indulge itself in advisory opinions." *Armco, Inc.* v. *Pub. Util. Comm.* (1982), 69 Ohio St. 2d 401, 406 [23 O.O.3d 361].

For the foregoing reasons, this court holds that the trial court erred in granting the motion for judgment notwithstanding the verdict based on the applicability of the doctrine of municipal immunity and the jury verdict awarding damages to the appellant is hereby reinstated.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

_____

[2] Specifically, appellant raised the following propositions of law:

"PROPOSITION OF LAW NO. 1

"Failure to plead the affirmative defense of sovereign immunity is a complete waiver of such defense, and the implied consent provision of Civil Rule 15(B) does not serve to allow the Trial Court to grant Judgment Notwithstanding the Verdict on the basis of an affirmative defense neither pled nor raised until after the jury verdict."

"PROPOSITION OF LAW NO. 2

"While a municipality is ordinarily cloaked with sovereign immunity for acts in performance of a governmental function, it is not immune from liability for negligence and nuisance when the municipality is on notice of a dangerous condition and injury subsequently occurs."

LOCHER and HOLMES, JJ., dissent.

HOLMES, J., dissenting. I have previously stated on numerous occasions my disagreement with the judicial abrogation of municipal immunity. I continue to adhere to that belief, so I must strenuously dissent from the judgment here and, particularly, paragraph one of the syllabus. However, I write here to comment on the manner in which the majority abrogates municipal immunity.

In my opinion in *King* v. *Williams* (1983), 5 Ohio St. 3d 137, 141, I raised certain questions relating to the abandonment of municipal immunity. While the majority partially responds to these questions, it neglects to address what I consider to be of paramount importance: should this court's decision be prospective or retroactive. In my opinion, the doctrine should be abrogated prospectively.

Generally, decisions of this court which overrule former decisions are applied retroactively. See *State, ex rel. Bosch,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 94, 98; *Peerless Electric Co.* v. *Bowers* (1955), 164 Ohio St. 209, 210 [57 O.O. 411]. Nevertheless, there are instances where this court has decided to apply a new rule of law prospectively only. See, *e.g., Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, 421-422 [75 O.O. 2d 474]. It is my opinion that if the defense of sovereign immunity must be abrogated at all, it should be done prospectively only.[3]

The doctrine of sovereign immunity has been a long standing principle of law in this state. To abolish it retroactively would deny municipalities that have relied upon it the opportunity to make arrangements to meet the new liability to which they are subject. The availability of liability insurance has been used in recent years to justify the dramatic expansion of tort liability. Yet, we impose liability on municipalities without allowing them the opportunity to obtain liability insurance. Further, this immunity should be annulled prospectively so that the General Assembly will be given an opportunity to act upon our decision. It is that branch of government which is best equipped to balance competing considerations of public policy. Lastly, the prospective abolition of this defense would be in line with the overwhelming weight of authority from other jurisdictions that have considered this question. See, *e.g., Nieting* v. *Blondell* (1975), 306 Minn. 122, 235 N.W. 2d 597; *Holytz* v. *Milwaukee* (1962), 17 Wis. 2d 26, 115 N.W. 2d 618; *Evans* v. *Bd. of Cty. Commrs.* (1971), 174 Colo. 97, 482 P. 2d 968; *Merrill* v. *Manchester* (1974), 114 N.H. 722, 332 A. 2d 378; *Willis* v. *Dept. of Conservation & Economic Dev.* (1970), 55 N.J. 534, 264 A. 2d 34; *Kitto* v. *Minot Park Dist.* (N.D. 1974), 224 N.W. 2d 795; *Oroz* v. *Bd. of Cty. Commrs.* (Wyo. 1978), 575 P. 2d 1155; *Smith* v. *State* (1970), 93 Idaho 795, 473 P. 2d 937.

---

[3] There is, of course, no federal constitutional barrier to such an application. See *Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.* (1932), 287 U.S. 358.

The second area upon which I wish to comment is the attempt of the majority to limit the abolition of municipal immunity. This is in line with other jurisdictions. See, *e.g., Merrill* v. *Manchester, supra; Willis* v. *Dept. of Conservation & Economic Dev., supra; Oroz* v. *Bd. of Cty. Commrs., supra; Parish* v. *Pitts* (1968), 244 Ark. 1239, 429 S.W. 2d 45; *Spanel* v. *Mounds View School Dist. No. 621* (1962), 264 Minn. 279, 118 N.W. 2d 795; *Spencer* v. *General Hospital* (C.A. D.C. 1969), 425 F. 2d 479; *Kitto* v. *Minot Park Dist., supra; Lipman* v. *Brisbane Elementary School Dist.* (1961), 55 Cal. 2d 224, 11 Cal. Rptr. 97, 359 P. 2d 465. See, also, 4 Restatement of the Law 2d 406, Torts, Section 895C.[4]

The majority correctly determines here that a municipality is immune when it acts legislatively or judicially. Also, I agree that actions which are characterized as "discretionary" should be immunized, but the ambiguity of the language utilized by the majority in this regard does not accomplish this desired result.

The majority describes this latter group of immunized actions as "* * * an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." Little practical guidance is given to bench and bar by the adoption of such a nebulous standard, nor are municipal employees informed with any specificity when they will be "second-guessed."

It is difficult for the judiciary by way of decisional law to comprehensively deal with these matters of practical public policy. No reported decision has been found which does more than set slippery standards in this area. This necessarily vague stance of the majority further demonstrates the weakness of this court's actions in the area of governmental immunity. Decisions in this area should have been left to the General Assembly, or, barring that, the General Assembly should have been given the opportunity to enact a practical, comprehensive solution before the court's decisions abrogating municipal immunity became effective.

This court's decisions in the area of governmental immunity cry out for a legislative response. I, for one, hopefully anticipate that the General Assembly will proceed as have the legislative bodies in other states, and enact responsive laws. See, *e.g.,* Cal. Govt. Code Anno., Sections 810 *et seq.*

LOCHER, J., concurs in the foregoing dissenting opinion.

---

[4] In the past, this court recognized that even in the absence of immunity, a municipality was not liable for legislative acts. *Superior Uptown* v. *Cleveland* (1974), 39 Ohio St. 2d 36 [68 O.O. 2d 21].