CLARK, A MINOR, ET AL., APPELLANTS, *v.* SNAPPER POWER EQUIPMENT, INC.; CLARK ET AL., APPELLEES.

[Cite as Clark *v.* Snapper Power Equip., Inc. (1986),
21 Ohio St. 3d 58.]

(No. 84-1922—Decided January 15, 1986.)

*Alfred J. Weisbrod Co., L.P.A., Alfred J. Weisbrod* and *William K. James,* for appellants.

*Freund, Freeze & Arnold, Neil F. Freund* and *Jane M. Lynch,* for appellees.

CELEBREZZE, C. J. Since the complaint was dismissed for failure to state a claim its allegations must be taken by us to be true. *Radovich* v. *National Football League* (1957), 352 U.S. 445, 448; *State, ex rel. Alford,* v. *Willoughby* (1979), 58 Ohio St. 2d 221, 223 [12 O.O.3d 229]; *Wilson* v. *Riverside Hospital* (1985), 18 Ohio St. 3d 8, 9. Therefore, the only issue to be decided is whether the doctrine of parental immunity is a bar to this action.

In reaching the conclusion to dismiss the suit against Alan Clark and Auto-Owners, the lower courts relied on our decision in *Teramano* v. *Teramano* (1966), 6 Ohio St. 2d 117 [35 O.O.2d 144]. In that case, this

court held in paragraph one of the syllabus that "[a] parent is immune from suit by his unemancipated child for tort unless facts of the case are sufficient to show abandonment of the parental relationship." See, also, *Mauk* v. *Mauk* (1984), 12 Ohio St. 3d 156.

However, in the more recent case of *Kirchner* v. *Crystal* (1984), 15 Ohio St. 3d 326, this court expressly overruled its earlier decisions in *Teramano* and *Mauk*. The syllabus in *Kirchner* held that "[t]he doctrine of parental immunity is hereby abolished without reservation."

Justice A. W. Sweeney's majority opinion noted that parental immunity had been previously followed on four basic public policy justifications:

"* * * [F]irst, the doctrine will preserve the domestic peace, harmony and tranquility of the family unit; second, the doctrine inhibits possible interference with parental discipline and control; third the doctrine hinders the potential depletion of the family funds or exchequer; and fourth, the doctrine prevents the possibility of fraud and collusion." *Id.* at 327.

Nevertheless, a majority of this court concluded that the "* * * traditional justifications posited in favor of the parental immunity doctrine* * *" no longer outweighed the desirability of providing "* * * the innocent victims of tortious conduct the forum they deserve in attempting to redress their claims." *Id.* at 329-330.

More recently the court was again called upon to consider the viability of the doctrine of parental immunity in *Shearer* v. *Shearer* (1985), 18 Ohio St. 3d 94. Judge Grey, sitting on this court by assignment, correctly noted in his majority opinion that "[t]here is no question that courts should avoid rules which can interrupt family harmony or usurp parental authority." *Id.* at 96. However, the consensus of the court was that empirical data did not support a conclusion that abrogation of the doctrine had led to problems or the disintegration of the family. Thus, the court reaffirmed the holding of *Kirchner* v. *Crystal, supra,* which had abolished parental tort immunity.

For the third time in the past year we are called upon to reexamine the merits of this legal debate.

It is the policy of courts to stand by precedent and not to disturb a point once settled. The doctrine of *stare decisis* is one of policy which recognizes that security and certainty require that an established legal decision be recognized and followed in subsequent cases where the question of law is again in controversy.

Ohio's judiciary, lawyers, insurers and its citizenry have a right to rely on the previous holdings which abolished parental immunity. Their reasonable expectations would be thwarted if this court failed to apply a settled principle of law to all future cases where facts are substantially the same.

Departure from controlling authority should be reserved for those instances where it is necessary to discard old ideas which are no longer beneficial and where it is wise to formulate new concepts to remedy con-

tinued injustice. Particularly instructive to this case is Justice William O. Douglas' apt observation that "* * * there will be no equal justice under law if a negligence rule is applied in the morning but not in the afternoon." Douglas, *Stare Decisis* (1949), 49 Colum. L. Rev. 735, 736.

Based on the foregoing, we hold that a minor child's complaint, sounding in tort, against a parent may not be dismissed for failure to state a claim upon which relief can be granted where the dismissal is premised on a theory that the doctrine of parental immunity is a complete bar to the action.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

SWEENEY, C. BROWN and DOUGLAS, JJ., concur.

C. BROWN, J., concurs separately.

WRIGHT, J., concurs separately in the syllabus.

LOCHER and HOLMES, JJ., dissent separately.

CLIFFORD F. BROWN J., concurring. I heartily concur with the majority's retroactive application of the abolition of intrafamilial immunity. I fail to see any merit in arguments against such retroactivity.

This court has already held that abolition of an immunity shall be applied retroactively. In *Zagorski* v. *South Euclid-Lyndhurst Bd. of Edn.* (1984), 15 Ohio St. 3d 10, this court, in holding that sovereign immunity is abolished retroactively, relied on the general rule that " 'a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it was never the law. * * *' " *Id.* at 12, quoting *Peerless Electric Co.* v. *Bowers* (1955), 164 Ohio St. 209, 210 [57 O.O. 411]. Thus, our retroactive application of the abolition of intrafamilial immunity is well supported by sound authority.

Furthermore, in support of the wisdom of our adherence to the *stare decisis* of abolition of parental immunity as established in *Kirchner* v. *Crystal* (1984), 15 Ohio St. 3d 326, and *Shearer* v. *Shearer* (1985), 18 Ohio St. 3d 94, is this excerpt from a lecture of the late United States Supreme Court Justice Benjamin Cardozo, from The Nature of the Judicial Process (1921), at 135-138:

"* * * [T]his power of interpretation [of contemporary mores] must be lodged somewhere, and the custom of the constitution has lodged it in the judges. If they are to fulfill their function as judges, it could hardly be

lodged elsewhere. Their conclusions must, indeed, be subject to constant testing and retesting, revision and readjustment; but if they act with conscience and intelligence, they ought to attain in their conclusions a fair average of trust and wisdom. * * * Insignificant is the power of innovation of any judge, when compared with the bulk and pressure of the rules that hedge him on every side. Innovate, however, to some extent, he must for with new conditions there must be new rules. All that the method of sociology demands is that within this narrow range of choice, he shall search for social justice. There were stages in the history of law when a method less psychological was needed. The old quantitative tests of truth did not fail in their day to serve the social needs. Their day has long passed. Modern juristic thought, turning in upon itself, subjecting the judicial process to introspective scrutiny, may have given us a new terminology and a new emphasis. But in truth its method is not new. It is the method of the great chancellors, who without sacrificing uniformity and certainty, built up the system of equity with constant appeal to the teachings of right reason and conscience. It is the method by which the common law has renewed its life at the hands of its great masters—the method of Mansfield and Marshall and Kent and Holmes.''

However, I do wish to express my disagreement with the majority's statement that "[d]eparture from controlling authority should be reserved for those instances where it is necessary to discard old ideas which are no longer beneficial * * *.'' It is my firm belief that departure from *stare decisis* should not be reserved for the ouster of *old* ideas, but rather for *any* ideas, old or new, which create injustice.

WRIGHT, J., concurring. It is comforting to observe the majority embrace the doctrine of *stare decisis*. I hasten to agree with Chief Justice Celebrezze that this court should place a high value on predictability, stability and order.

In joining the majority opinion I would observe that the announced public policy considerations as reflected in *Mauk* v. *Mauk* (1984), 12 Ohio St. 3d 156, are in my view still viable.[1] However, it is not the function of a judge to impress his or her personal views of morality or rectitude on a society which clearly rejects same. Society generally speaks through its elected representatives and I would have preferred that the General Assembly had long ago resolved the question that is again before us.

In order to impose obligations, which is one of a court's principal functions, and to avoid the appearance of being a coercive regime, we must assert that our rules are just. On this point, I can find nothing of recent vintage emanating from the General Assembly which supports the concept

---

[1] In my opinion *Mauk* left unsaid one of the principal arguments underlying the history of parental and interspousal immunity; that is, the biblical instruction to the effect that one should honor and respect one's parents.

of immunizing a parent from suit under the facts presented today. Indeed, there is a mass of empirical data supporting a contrary result.

I do not believe any member of this court should cling blindly to precedent. I respect the doctrine of *stare decisis* and believe that we should discard precedent only where it is *clearly* wrong. We should not decide cases keyed to the personal values of a majority of justices who happen to be holding office at the time. We should of course be careful in creating new remedies without considering their ramifications. These constraints require that rules be applied consistently and impartially. I believe that the decision reached today meets the criteria noted above. Thus, I concur in the majority opinion.

LOCHER, J., dissenting. For the reasons set forth in my dissents to *Kirchner* v. *Crystal* (1984), 15 Ohio St. 3d 326, 332, and *Shearer* v. *Shearer* (1985), 18 Ohio St. 3d 94, 103, I am once again compelled to dissent.

The underlying policy rationales for *stare decisis* articulated by the majority as "security and certainty" are ill-served by allowing retroactive abolition of intrafamilial immunity. See, *e.g.,* my dissent to *Zagorski* v. *South Euclid-Lyndhurst Bd. of Edn.* (1984), 15 Ohio St. 3d 10, 13. This court's decision in *Kirchner* v. *Crystal, supra,* occurred well after the insurance contract was entered into by appellee Auto-Owners herein—the accident itself occurred November 2, 1981. The insurance contract was premised upon certain legal assumptions not the least of which was the existing law of this state which included this court's prior recognition of the immunity doctrine. The retroactive abolition of immunity thus defeats the expectations and assumptions of the insurance contract and diminishes, rather than enhances, "security and certainty."

I am thus compelled to stand by my original position on intrafamilial immunity and remain unpersuaded by today's majority opinion. Therefore, I dissent.

HOLMES, J., dissenting. I dissent upon the basis of my dissents within *Kirchner* v. *Crystal* and *Shearer* v. *Shearer, supra.*