DUNKEL ET AL., APPELLEES, *v.* MOTORISTS MUTUAL INSURANCE COMPANY, APPELLANT.

(No. 10298—Decided October 16, 1987.)

*Patrick W. Allen,* for appellees.
*Howard P. Krisher,* for appellant.

FAIN, J. This is an appeal from a judgment entered in the Montgomery County Court of Common Pleas declaring the rights and liabilities of the parties to an insurance agreement issued by defendant-appellant Motorists Mutual Insurance Company ("Motorists"). After reviewing the record, we conclude that the trial court correctly determined that Motorists was not able to set off an amount received from a tortfeasor liable to its insured against its own limit of liability for uninsured/underinsured motorist coverage. Moreover, we agree with the trial court's finding that there are three distinct causes of action in this case instead of two, as claimed by Motorists. Therefore, the decision of the trial court will be affirmed.

I

On December 18, 1983, plaintiff-appellee Mark C. Dunkel, his wife Annette, and their minor child Jessica were driving south on Salem Avenue. At the same time, Edward D. Thompson was traveling north on Salem Avenue. At the intersection of Salem Avenue and Kenwood Avenue, a vehicle driven by Mrs. Ruth L. Clements entered Thompson's lane of travel from Kenwood Avenue. Thompson swerved left of the centerline and his vehicle collided with the vehicle operated by the Dunkels. As a result of the accident, Jessica Dunkel suffered severe personal injuries, in fact becoming a quadriplegic.

At the time of the accident, both Thompson and the vehicle he was driving were uninsured. Clements' vehicle was insured under a policy issued by State Farm Mutual Automobile Insurance Company. The Dunkels had a policy in effect at the time with Motorists which provided liability in-surance in the amount of $100,000 for each person up to a limit of $300,000 per accident with corresponding limits for uninsured and underinsured motorist coverage.

Dunkel filed a complaint against Motorists in the Common Pleas Court of Montgomery County. In the complaint, Dunkel asked the court to declare that in addition to Jessica Dunkel's claim for personal injuries, he and his wife each had a separate, independent claim against Motorists for the loss of Jessica's services. Dunkel asked the court to declare that Motorists' liability on each claim was $100,000 up to an aggregate limit of $300,000.

In the first of two motions for summary judgment, Motorists contended that only two causes of action arose from the accident: an action by Jessica Dunkel for her personal injuries and a joint action by her parents for loss of their daughter's society, companionship, and services.

Dunkel filed a memorandum in opposition to Motorists' motion for summary judgment as well as his own motion for summary judgment. The parties then submitted the case to the trial court on their cross-motions for summary judgment.

The trial judge, the Honorable John W. Kessler, granted the Dunkels' motion for summary judgment, holding as follows:

"This court perceives a trend in the law to recognize a separate legal identity for each individual regardless of family relationship at least as pertains to third persons outside the family unit. *Guillot* v. *Travelers Indemnity Co.,* 338 So. 2d 334 (La. App. 1976); *Allstate Ins. Co.* v. *Elkins,* 396 N.E. 2d 528, 77 Ill. 3d 384 (1979); *Sisler* v. *Seeberger,* 596 P. 2d 1362, 23 Wash. App. 612 (1979); *Lee* v. *Comer,* 224 S.E. 2d 271 (W. Va. 1976); *Gibson* v. *Gibson,* 479 P. 2d 648, 3 Cal. 3d 914 (1971);

*Sumwalt* v. *Allstate Ins. Co.,* 12 Ohio St. 3d 294 (1984); and *Clark* v. *Snapper Power Equipment, Inc.,* 21 Ohio St. 3d 58 (1986).

"This court can find no compelling reason not to declare the equal right of a parent to the services of [his] child individual[ly] as opposed to joint[ly]. To suggest that Annette Dunkel does not suffer a loss unique from that of her husband, Mark, for the society, love, comfort, and companionship of her daughter is to deny what any parent knows in relation to their own special relationships with their children as individuals. Clearly, Annette is separately damaged.

"The only possible arguments perceived by this Court to relegate the equal rights of parents to the services of their children to the status of joint rights as opposed to individual ones are: to preserve the domestic peace, harmony, and tranquility of the family unit, and to prevent the possibility of fraud and collusion. Neither of these arguments is valid vis-a-vis providing the innocent victims of tortious conduct (of third persons) the forum they deserve in attempting to redress their claims. *Kirchner* v. *Crystal,* 15 Ohio St. 3d 326 (1984).

"Plaintiffs' motion is SUSTAINED. Defendant's motion is OVERRULED."

Motorists then filed a second motion for summary judgment. In this motion, Motorists stated that since the case had been initiated, the Dunkels had entered into a settlement agreement with Clements. Under this agreement, Clements' insurer was to pay its policy limits of $100,000 to the Dunkels in satisfaction of their claims against Clements. In its motion for summary judgment, Motorists argued that under R.C. 3937.18(A)(2), it was entitled to set off the amount received by the Dunkels from State Farm against its own limits of liability.[1]

In overruling Motorists' second motion for summary judgment, the trial court held that since the vehicle which had ultimately struck the Dunkels' vehicle had been Thompson's, and since Thompson was an uninsured motorist, R.C. 3937.18(A)(2) was not applicable. According to the trial court, R.C. 3937.18(A)(1), the provision which dealt with uninsured motorists, was controlling. The court, noting that R.C. 3937.18(A)(1) does not provide for a setoff, held that although Motorists' policy provided for such a setoff against its own uninsured motorist coverage, enforcing such a provision would violate R.C. 3937.18.

The trial court entered final judgment in the case declaring the rights of the parties in accordance with its previous decisions and orders. From this judgment, Motorists appeals.

II

Motorists' first assignment of error is as follows:

"Whether the trial court erred in finding that Motorists Mutual Insur-

---

[1] R.C. 3937.18(A)(2) requires automobile liability insurance policies to provide:

"Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

ance Company was not permitted to set off $100,000, paid to the plaintiffs by State Farm Mutual Automobile Insurance Company on behalf of Ruth L. Clements, against its limit of liability under the uninsured/underinsured provision of [the] insurance policy."

Motorists argues that since an attachment to its policy contains language providing for a setoff against its uninsured motorist coverage, the trial court erred in holding that Motorists could not set off the amount recovered by the Dunkels from Clements' insurer. In support of its argument, Motorists relies upon R.C. 3937.18(A)(2), which states that the limits of liability for an insurer providing underinsured motorist coverage shall be reduced by amounts recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured. Therefore, according to Motorists, since Clements was a person liable to its insured, it may set off the amount received from her insurer against the limits of its liability. We disagree.

While it is true that Clements was liable to the Dunkels, her insurance policy provided liability coverage for bodily injury in an amount equal to the uninsured motorist coverage set forth in Motorists' policy.[2] Therefore, Clements does not qualify as an underinsured motorist under either the definition found in Motorists' policy or under R.C. 3937.18(A)(2). Consequently, coverage under the underinsured motorist provisions of Motorists' policy would not have been available. *Hagen* v. *J.C. Penney Cas. Ins. Co.* (1984), 16 Ohio App. 3d 218, 16 OBR 234, 475 N.E. 2d 177.

The coverage at issue in this case is the uninsured motorist coverage with respect to Thompson, who was uninsured. Although there is language in Motorists' policy which appears to provide for a setoff against its uninsured motorist coverage, we find no statutory authority allowing such a provision.

In 1980, the Ohio General Assembly enacted R.C. 3937.181, which required insurers to provide underinsured motorist coverage in addition to the uninsured motorist coverage mandated by R.C. 3937.18. Am. Sub. H.B. No. 22 (138 Ohio Laws, Part I, 1458). In 1982, the legislature repealed R.C. 3937.181 and amended R.C. 3937.18 to require insurers to provide both uninsured and underinsured motorist coverage. As part of the amendment of R.C. 3937.18, the legislature expanded R.C. 3937.18(A) and added language permitting insurers to reduce their liability for underinsured motorist coverage by any amounts recovered under injury liability bonds and insurance policies covering persons liable to their insureds. Am. H.B. No. 489 (139 Ohio Laws, Part II, 2936-2939). However, the General Assembly did not enact a corresponding provision applicable to uninsured motorist coverage. Thus, insurers may not apply a setoff with respect to the uninsured motorist coverage now provided for in R.C. 3937.18(A)(1).

As additional authority for its argument, Motorists relies upon *James* v. *Michigan Mut. Ins. Co.* (1985), 18 Ohio St. 3d 386, 18 OBR 440, 481 N.E. 2d 272, in which the court held as follows:

"An insurer may apply payments

---

[2] Under an endorsement to Motorists' policy, the term "uninsured motor vehicle" includes "underinsured motor vehicles." The endorsement goes on to define "underinsured motor vehicle" as "* * * a land motor vehicle or trailer of any type to which

a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is *less* than the limit of liability for this coverage." (Emphasis added.)

made by or on behalf of an underinsured motorist as a setoff directly against the limits of its underinsured motorist coverage, so long as such setoff (1) is clearly set forth in the terms of the underinsured motorist coverage and (2) does not lead to a result wherein the insured receives a total amount of compensation that is less than the amount of compensation that he would have received if he had been injured by an uninsured motorist." *Id.* at paragraph two of the syllabus.

*James* was concerned solely with underinsured motorist coverage. The same result would necessarily obtain in a case involving uninsured motorist coverage. We are therefore left with the legislature's failure to adopt such a setoff when it amended R.C. 3937.18 (A) in 1982.

Finally, R.C. 3937.18(E) is significant:

"In the event of payment to any person under the coverages required by this section and subject to the terms and conditions of such coverages, the insurer making such payment to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or death for which such payment is made, including any amount recoverable from an insurer which is or becomes the subject of insolvency proceedings, through such proceedings or in any other lawful manner. No insurer shall attempt to recover any amount against the insured of an insurer which is or becomes the subject of insolvency proceedings, to the extent of his rights against such insurer which such insured assigns to the paying insurer."

This provision evinces a clear legislative intent that amounts received by an insured from a liable tortfeasor are to inure to the benefit of the insurer.

However, in *James, supra,* the Ohio Supreme Court found that R.C. 3937.18(C), the predecessor to R.C. 3937.18(E), essentially extended a right of subrogation to insurers. According to the court, this right of subrogation was subject to the established rule that where an insured has not interfered with an insurer's subrogation rights, the insurer may neither be reimbursed for payments made to the insured nor seek a setoff from the limits of its coverage until the insured has been fully compensated for his injuries. *James, supra,* at paragraph one of the syllabus. In the case before us, there is no contention that the Dunkels were fully compensated by the payment of $100,000 by State Farm. Thus, R.C. 3937.18(E) was not available to Motorists.

Motorists' first assignment of error is overruled.

### III

Motorists' second assignment of error is as follows:

"Whether the trial court erred in finding that Jessica Dunkel, Mark Dunkel, and Annette Dunkel each have an independent claim under the uninsured motorist provision of the insurance policy issued by Motorists Mutual Insurance Company."

Motorists argues that the trial court incorrectly determined that Mark Dunkel and Annette Dunkel have separate, independent causes of action against Motorists for the loss of Jessica's services. In support of its argument, Motorists cites a number of Ohio cases that state the general proposition that where a minor child sustains an injury allegedly as the result of negligence of a defendant, two separate causes of action arise: an action by the minor child for his personal injuries, and a derivative action in favor of the parents of the child for the loss of his services and his medical ex-

penses. However, while the cases cited by Motorists state this principle, we have found that none of them directly considers the question of whether the cause of action that arises in favor of the parents must be asserted jointly, or whether each parent individually has a separate cause of action for loss of the child's services.

In this case, the trial court reasoned that since the growing trend in the law generally is to recognize the husband and wife as distinct legal entities, Mark and Annette Dunkel each had acquired a separate cause of action for the loss of Jessica's services. We cannot improve upon Judge Kessler's reasoning; therefore, we adopt it here. Accordingly, the second assignment of error is overruled.

### IV

Both assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN and WILSON, JJ., concur.