**GREYHOUND FOOD MANAGEMENT INC., et al., Plaintiffs–Appellees,**

v.

**CITY OF DAYTON, Defendant–Appellant.**

**FEDERAL INS. CO., et al., Plaintiffs–Appellees,**

v.

**CITY OF DAYTON, Defendant–Appellant.**

No. 87–3396.

United States Court of Appeals, Sixth Circuit.

Argued March 17, 1988.

Decided July 27, 1988.

Rehearing and Rehearing En Banc Denied Sept. 15, 1988.

---

Neil F. Freund, Jane M. Lynch (argued), Freund, Freeze & Arnold, Dayton, Ohio, for defendant-appellant.

F. Thomas Greene, Green & Green, Dayton, Ohio, Sam G. Caras (argued), for Indiana Ins. Co.

Gregory C. Gibson, Jenks & Myers Co., Dayton, Ohio, for Federal Ins. Co.

William H. Thornburgh, Thornburgh, Ferguson & Weaver, Dayton, Ohio, for Cincinnati Ins. Co.

Before MILBURN and BOGGS, Circuit Judges, and ALDRICH, District Judge.*

ANN ALDRICH, District Judge.

In this consolidated appeal, the City of Dayton appeals from the district court's ruling that § 2744.05(B) of the Ohio Revised Code, which limits the tort liability of political subdivisions, may not be applied retroactively. For the reasons set forth below, we affirm.

I

In January 1983, a 24–inch water main, for which the defendant City of Dayton was responsible, twice broke and caused over $3.5 million of flood damage at Sinclair Community College. The plaintiffs Indiana Insurance Company and Federal Insurance Company paid the College's claims for damages due to the flooding, and consequently became subrogees of their insureds' claims against Dayton. The insurance companies, along with other plaintiffs who had been damaged by the flooding, brought suit against Dayton and C.E. Schultz and Son. C.E. Schultz and Son's insurer, Cincinnati Insurance Company, filed a cross-claim against Dayton, based upon a subrogation clause in its insurance contract.

Dayton moved for summary judgment against all of the insurance companies, relying on § 2744.05 of the Ohio Revised Code, which provides, in relevant part:

Notwithstanding any other provision of the Revised Code or rules of court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to persons or property caused by an act or omission in connec-

* Honorable Ann Aldrich, United States District Court for the Northern District of Ohio, sitting by designation.

tion with a government or proprietary function:

\* \* \* \* \* \*

(B) ... No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision
....

Ohio Rev.Code Ann. § 2744.05 (Anderson 1987). The insurance companies do not in this case dispute the general validity of the statute, but argue that it cannot be applied to claims which arose before its passage. The court below agreed, and denied Dayton's motion for summary judgment. The question was certified for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), and this Court granted Dayton's motion for permission to appeal.

## II

The insurance companies advanced several theories below as to why § 2744.05(B) did not limit their subrogation claims against Dayton, arguing that the retroactive application of the statute violated: the provisions of the Ohio Constitution which prohibit retroactive laws or laws impairing contracts; the United States Constitution's prohibition against the impairment of contracts; the equal protection clause of the United States Constitution; the due process clause of the United States Constitution and the due course clause of the Ohio Constitution; and the takings clause of the United States Constitution.

The district court rejected the theories based on the impairment of contracts and on the Ohio Constitution's bar against retroactive laws, although it accepted the remaining ones. Because we agree with the insurance companies' argument that the retroactive application of this statute violates Article II, Section 28 of the Ohio Constitution, which prohibits the enactment of retroactive laws, we need not reach the other theories advanced below.

A. Unlike the situation in many states, the sovereign immunity of political subdivisions in Ohio was a judicially created doctrine. *See Enghauser Manufacturing Co. v. Eriksson Engineering*, 6 Ohio St.3d 31,

33, 451 N.E.2d 228, 230 (1983). In *Enghauser*, the Ohio Supreme Court abrogated the doctrine of sovereign immunity for political subdivisions, stating that "[i]nasmuch as it is a judicially created doctrine, it may be judicially abolished." *Id.* Within approximately two years, the Ohio legislature reenacted the doctrine in a limited form, by passing ch. 2744.

The breaks in the water main, and the damage they caused, occurred in January 1983. The present lawsuits were filed in December 1984 and January 1985 and were consolidated on March 20, 1985. Chapter 2744 was passed by the Ohio legislature, and became effective on November 20, 1985. As originally enacted, the statute did not apply retroactively; however, the Ohio legislature later passed an emergency measure, effective April 30, 1986, which applied § 2744.05(B) to judgments obtained on or after November 20, 1985, unless trial had already commenced by that date. The legislature reasoned that unless § 2744.05(B) were made retroactive,

> some political subdivisions [would be] required to pay the entire amount of judgments against them despite the fact that the plaintiffs involved already have been entirely or partially compensated from insurance or other collateral benefits for injury, death or loss experienced.

Substitute Senate Bill 297, § 5, 1986 Ohio Legis. Service 5–284 (Baldwin).

B. In deciding this case, "we must apply state law 'in accordance with the then controlling decision of the state's highest court.'" *Angelotta v. American Broadcasting Co.*, 820 F.2d 806, 807 (6th Cir. 1987) (citations omitted). "If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it." *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985). The "available data" include relevant dicta from the state supreme court, decisional law of appellate courts, restatements of law, law review commentaries, and the "majority rule" among other states. *Angelotta*, 820 F.2d at 807 (citing *Bailey*, 770 F.2d at 604).

Our decision in this case has become far simpler because of the latest pronouncement by the Ohio Supreme Court on the Ohio Constitution's bar against retroactive laws, a decision which the parties did not have the benefit of at time of argument. In *Van Fossen v. Babcock & Wilcox,* 36 Ohio St.3d 100, 522 N.E.2d 489 (1988), the Ohio Supreme Court articulated the steps a court should follow in determining whether a statute violates the retroactivity provisions of the Ohio Constitution.

■ First, a court must look at the intent of the legislature. Only after a court has determined that the legislature intended a law to be given retroactive application, should a court engage in the constitutional analysis. Here, the emergency measure passed by the Ohio legislature states that the statute shall apply to all judgments obtained on or after November 20, 1985, unless trial shall have already commenced by that date. The *Van Fossen* court reiterated that words used by the legislature are to be given their common meaning. *Id.* at 103, 522 N.E.2d at 493. By using the phrase "trial has commenced," rather than, for example, "action has been filed," we believe that the Ohio legislature meant exactly what it said, that the *trial* in the case had to have started prior to November 20, 1985, in order for the retroactivity provision not to apply. We thus conclude that the Ohio legislature intended § 2744.05(B) to be applied retroactively, and that this case fits within its contours.

Once a court determines that the legislature intended a statute to apply retroactively, the court should consider whether retroactive application violates the Ohio Constitution. Article II, Section 28 of the Ohio Constitution provides in relevant part "The General Assembly shall have no power to pass retroactive laws." The Ohio Supreme Court has long held, however, that the Ohio Constitution bans the passage only of retroactive substantive laws, but not of retroactive remedial laws. *Gregory v. Flowers,* 32 Ohio St.2d 48, 52–53, 290 N.E.2d 181, 184–85 (1972). The key question for this Court, then, is whether the law in question is substantive or reme-dial. While in some cases, the proper characterization of a particular statute may be difficult, in most cases, the two categories "provide readily distinguishable contours." *Van Fossen,* 36 Ohio St.3d 100, 522 N.E.2d 489 (1988) (Syl. ¶ 3).

"Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective or retroactive." *Id.* at 106, 522 N.E.2d at 496 (quoting *Cincinnati v. Seasongood,* 46 Ohio St. 296, 303, 21 N.E. 630, 633 (1889)). In particular, the Ohio Supreme Court has held that a statute is substantive when it does any of the following:

impairs or takes away vested rights; affects an accrued substantive right; imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction; creates a new right out of an act which gave no right and imposed no obligation when it occurred; creates a new right, [or] gives rise to or takes away the right to sue or defend actions at law.

*Id.* 36 Ohio St.3d at 107, 522 N.E.2d at 496 (citations omitted).

In *Van Fossen,* the Ohio Supreme Court held that a statute imposing a stricter requirement for a worker to bring a suit against his employer for intentional tortious injury (requiring that it be "substantially certain" to occur) violated the Ohio Constitution's bar against retroactive laws. *Id.* at Syl. ¶ 4.

■ C. The statute in question, § 2744.05(B), prevents insurance companies who have paid their insureds, and have become subrogees of their insureds' claims, from bringing suit against political subdivisions. Before the emergency measure was passed, subrogees were permitted to sue political subdivisions; afterwards, they were not. The insurance companies in this action became subrogees when they paid the claims of their insureds, *before* § 2744.05(B) was enacted. We conclude that the statute plainly destroyed the claims of the insurance companies against

Dayton, and therefore violates Article 2, Section 28 of the Ohio Constitution.

Dayton contends that § 2744.05(B) does not violate the Ohio Constitution's bar against retroactive laws because it is merely remedial. We do not agree. First, as the Ohio Supreme Court has stated, substantive laws are not only those that bar "vested rights," but also those that either take away or give the right to sue at law. It could not be plainer that before the passage of this statute the insurance companies could sue Dayton at law, and afterwards they could not.

Dayton argues that sovereign immunity relates only to the remedy available, not to the existence of a cause of action. We do not believe that the Ohio Supreme Court would take such a narrow view. A statute which prevents a party from suing is one that destroys a substantive right, as that term is used in Ohio jurisprudence, no matter what the form of that destruction. For example, although statutes of limitation are considered "remedial" laws, *Gregory v. Flowers*, 32 Ohio St.2d at 53, 290 N.E.2d at 185 (citing *Smith v. New York R.R. Co.*, 122 Ohio St. 45, 170 N.E. 637 (1930)), shortening the limitation period so as to completely destroy a party's action violates the Ohio Constitution; a party must be given a reasonable additional amount of time within which to file his claim. *Id.*

In *Van Fossen,* the court looked to the requirements of an intentional tort claim at the time when the cause of action accrued, the time the case was filed, and the time the appeal was pending. The court never discussed when the plaintiff's right to sue "vested"; rather, the analysis was in terms of whether his ability to bring the action was made more difficult by the passage of the statute. *See id.* 36 Ohio St.3d at 109, 522 N.E.2d at 498. Because plaintiff's ability to bring suit was made more difficult, the court found the statute limited or denied a substantive right, and held that the Ohio Constitution barred its retroactive application.

Dayton cites several Ohio Supreme Court cases which abolished immunities retroactively, *Clark v. Snapper Power Equip-*

*ment, Inc.,* 21 Ohio St.3d 58, 488 N.E.2d 138 (1986) (parental immunity); *Enghauser Manufacturing Co. v. Eriksson Engineering,* 6 Ohio St.3d 31, 451 N.E.2d 228 (1983) (sovereign immunity); *see also Wilfong v. Batdorf,* 6 Ohio St.3d 100, 451 N.E.2d 1185 (1983) (retroactively applying the Ohio comparative negligence law), and argues that if immunities can be abolished retroactively, then they can certainly be established retroactively.

It is well-settled law in Ohio that the judicial abolition of an immunity will normally be applied retroactively. *Deskins v. Young,* 26 Ohio St.3d 8, 10–11, 496 N.E.2d 897, 899 (1986). "The general rule is that a decision of a court of supreme jurisdiction overruling a prior decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law." *Id.* (emphasis omitted) (quoting *Peerless Equipment Co. v. Bowers,* 164 Ohio St. 209, 129 N.E.2d 467 (1955)); *see also Snapper Power Equipment,* 21 Ohio St.3d at 61, 488 N.E.2d at 141 (Brown, J., concurring). That this same rationale does not apply to legislative changes of law is obvious. When a legislature abolishes a law, it is not that the prior law never was a law; rather, it is that a prior law is no longer the law. Thus, the first two cases do not support Dayton's argument that the legislative enactment of immunity should be applied retroactively.

There is yet another reason why these first two cases are inapplicable to the question at hand. The Ohio Constitution plainly states that "the General Assembly" shall have no power to pass retroactive laws. Nowhere does it state that the judiciary may not apply laws retroactively, and, as demonstrated above, the Ohio Supreme Court has quite clearly held to the contrary. Until the Ohio Supreme Court rules otherwise, we are unwilling to conclude that a judicial decision applied retroactively supports upholding a legislative statute applied retroactively.

It is true that in *Wilfong,* Dayton's third case, the Ohio Supreme Court described the comparative negligence statute as remedial, and thus upheld its retroactive applica-

tion. 6 Ohio St.3d at 104, 451 N.E.2d at 1189. However, in *Van Fossen,* a decision which we recognize had not yet been decided when Dayton presented its arguments, the Ohio Supreme Court stated that the *Wilfong* court had irrationally concluded that the comparative negligence statute was remedial and had mischaracterized "what was clearly a substantive defense." *Van Fossen,* 36 Ohio St.3d at 108, 522 N.E.2d at 497. The court further stated that through its present discussion it would "hopefully avoid this detour from sound legal analysis." We must thus conclude that *Wilfong*'s analysis is faulty and should not be followed. The clear impression is that while the Ohio Supreme Court did not explicitly overrule *Wilfong,* if it were to consider that case again, the result would be quite different.

We conclude that § 2744.05(B), the legislative reinstatement of sovereign immunity against subrogation claims, is a substantive statute, and thus may not be applied retroactively. Although we do not agree with the district court's rationale, we affirm its denial of summary judgment for Dayton, and remand for further proceedings.