**MEIER et al.**

v.

**MORRISON.**

Court of Common Pleas of Ohio,
Athens County.

No. 94CI000191.

Decided Feb. 28, 1995.

*Havens, Willis, Erney, Skrobot & Fisher, Robert D. Erney* and *Kim M. Astrella,* for plaintiffs.

*Mollica, Gall, Sloan & Sillery Co., L.P.A.,* and *Steven T. Sloan,* for defendant.

MICHAEL WARD, Judge.

The complaint alleges that plaintiff John Paul Meier, age two and a half, was bitten by a dog owned by defendant Marie Morrison. The basis for the complaint is Ohio's dog bite statute, R.C. 955.28.

Defendant filed a counterclaim for contribution against plaintiff Richard Meier, father of John Paul Meier. The counterclaim alleged that plaintiff Richard Meier negligently supervised and cared for his son, John Paul.

On January 12, 1995, plaintiff Richard Meier filed a motion for summary judgment. Plaintiff claims that he is entitled to summary judgment on defendant's claim for contribution, arguing that he cannot be liable in tort to his son under a claim of "negligent supervision."

On January 25, 1995, defendant filed a memorandum contra. Plaintiff has not filed a reply memorandum.

Summary judgment is appropriate when the movant demonstrates (1) that there is no genuine issue of material fact, (2) that he, she, or it is entitled to judgment as a matter of law, and (3) that reasonable minds construing the evidence most strongly in the nonmovant's favor could only conclude adversely to the nonmovant. See Civ.R. 56(C); *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10, 11–12.

R.C. 955.28(B) states in pertinent part:

"The owner * * * of a dog is liable in damages for any injury * * * or loss to person or property that is caused by the dog, unless the injury * * * or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of an owner * * *, or was committing or attempting to commit a criminal offense against any person, or was teasing, tormenting, or abusing the dog on the owner's * * * property."

The counterclaim does not allege the occurrence of any of the exceptions to liability under the statute, nor would one expect it to, since those exceptions are in the nature of defenses to an R.C. 955.28(B) action.

Defendant's position is that *Kirchner v. Crystal* (1984), 15 Ohio St.3d 326, 15 OBR 452, 474 N.E.2d 275, abolished the doctrine of parental immunity without reservation. In *Kirchner* at 327, 15 OBR at 452, 474 N.E.2d at 277, the Supreme Court of Ohio wrote that "the doctrine of parental immunity has stood as an impervious obstacle for almost all children who have attempted to institute legal proceedings against their parents, in order to recover damages for injuries sustained as a result of the parent's tortious actions."

The court then explained the four historical justifications for parental immunity and found them to be unsupportive:

"Our research concerning parental immunity reveals that the doctrine has been upheld on four basic justifications: first, the doctrine will preserve the domestic peace, harmony and tranquility of the family unit; second, the doctrine inhibits possible interference with parental discipline and control; third, the doctrine hinders the potential depletion of the family funds or exchequer; and fourth, the doctrine prevents the possibility of fraud and collusion.

"We find these rationalizations underlying the doctrine of parental immunity to be outdated, highly questionable and unpersuasive. To state that the allowance of actions between parents and children will somehow undermine the familial peace and tranquility is to ignore the evolution of exceptions which have eroded the doctrine into a somewhat limited application of immunity." *Id.*

After explaining why the four reasons justifying parental immunity were unpersuasive, the Supreme Court then wrote the following regarding its reasons for abolishing the doctrine:

"Abolition of parental immunity as a matter of public policy will provide the innocent victims of tortious conduct the forum they deserve in attempting to redress their claims. The widespread availability of liability insurance from a variety of sources operates to eradicate any perceived problems which the absence of immunity may have presented." *Id.*, 15 Ohio St.3d at 330, 15 OBR at 455, 474 N.E.2d at 278.

In *Shearer v. Shearer* (1985), 18 Ohio St.3d 94, 18 OBR 129, 480 N.E.2d 388, and *Clark v. Snapper Power Equip., Inc.* (1986), 21 Ohio St.3d 58, 21 OBR 359, 488 N.E.2d 138, the court followed the holding in *Kirchner, supra.* The court in *Shearer, supra,* at 99–100, 18 OBR at 133–135, 480 N.E.2d at 393–395, discussed the issue of collusion and considered it not to be a judicial problem, but one of a "free market economy" regarding the purchase of liability insurance.

The court notes the following regarding the fact situations in the cases cited by defendant:

1. In *Kirchner*, a minor stepson, who was a passenger in a vehicle driven by his stepfather, was permitted to sue his stepfather for injuries suffered by the alleged negligence of the stepfather;

2. In *Shearer*, an infant child was permitted to sue her father for his alleged negligent operation of his car that resulted in her injuries; and

3. In *Clark*, a five-year-old child, who was injured in an accident involving a power lawnmower being operated by his father, was permitted to sue his father for the negligent operation of the lawnmower that contributed to the accident and the minor child's resultant injuries.

The distinction between the fact situation in the instant case and those in the three Ohio Supreme Court cases referenced above concerns the actions of the tortfeasor. In those three cases, the tortfeasors were affirmatively performing functions which led to the injuries of the minor children, *i.e.*, operating a vehicle or a lawnmower. However, in the instant case, the father is alleged to have been negligent by omission, *i.e.*, failing to supervise his child.

The court finds that an alleged tortfeasor's actions or omissions are inconsequential to his or her liability. In *Kirchner*, the Ohio Supreme Court opened the avenues for a child to sue his or her parent for the parent's tortious actions "without reservation." The court finds this phrase to mean, among other things, without regard to whether the parent's negligence stemmed from an action or an omission to act.

The court distinguishes the cases cited by plaintiff as follows:

1. *Drew v. Sandusky Raceway* (Mar. 11, 1983), Erie App. No. E–82–37, unreported, and *Moler v. Quality Chevrolet, Inc.* (1981), 2 Ohio App.3d 120, 2 OBR 134, 440 N.E.2d 1228, were decided prior to the abolishment of parental immunity in the *Kirchner* case;

2. *Westfield Ins. Co. v. Jeep Corp.* (1988), 55 Ohio App.3d 109, 562 N.E.2d 912, is a contract, not a tort, case. In *Westfield, supra,* at 111, 562 N.E.2d at 913, the court wrote as follows:

"Once again, appellant simply fulfilled its contractual promise to pay underinsured benefits and has not discharged any tortfeasor."

3. *Evans v. Graham* (1991), 71 Ohio App.3d 417, 594 N.E.2d 71, and *D'Amico v. Burns* (1984), 13 Ohio App.3d 325, 13 OBR 402, 469 N.E.2d 1016, do not hold that the concept of "negligent supervision" by a parent applies only to the actions of the child against a third person.

The court is not bound by the New York cases cited by plaintiff and does not find them persuasive, especially in light of *Kirchner's* abolition, "without reservation," of parental immunity in Ohio. It is noteworthy that there is a nationwide split of authority on the issue at hand and related issues. See Annotation (1983), 25 A.L.R.4th 1120, Sections 5 and 6; and Annotation (1981), 6 A.L.R.4th 1066, Section 14.

The court recognizes that under R.C. 2307.31(A), the requirement of contribution exists where two parties jointly participated in the commission of a tort. In the instant case, the complaint alleges that defendant actively participated in injuring the child and the counterclaim alleges that the father participated in injuring his child by negligence in supervision.

Plaintiff is concerned that every parent will be liable in contribution for a child in every "dart-out" case or for every time that a minor child is injured at the hands of a third party. That is not a likely outcome of this decision, for it is only those parents whose negligent supervision has proximately caused injury to their children who may be liable for contribution. Anyway, should it not be the duty of a parent to hold the hand of a minor child when walking along a busy highway or to do his or her best to protect a child from injuries due to the reasonably anticipated tortious actions of a third party?

Young John Paul, unfortunately, was bitten by a dog owned by defendant. The evidence may be that John Paul was injured despite his father's best efforts to supervise him. However, the evidence also may be that his father should have protected John Paul from recognizable dangers. The court believes that the jury must determine if plaintiff Richard Meier's supervision of his son was negligent.

The court finds that Richard Meier may be held liable for contribution for negligently supervising John Paul. If the jury so finds, then defendant has a valid claim for contribution. The court finds that there are material facts in dispute with respect to defendant's claim of negligent supervision that preclude the court from granting summary judgment.

Accordingly, the court finds plaintiff Richard Meier's motion for summary judgment not well taken and DENIES the same.

*Motion denied.*