MATHIS ET AL., APPELLANTS, *v.* CLEVELAND
PUBLIC LIBRARY ET AL., APPELLEES.

[Cite as Mathis *v.* Cleveland Public Library (1984), 9 Ohio St. 3d 199.]

(No. 82-1809—Decided February 22, 1984.)

*Messrs. Bruner & Shafran, Mr. Steven M. Weiss* and *Mr. Michael Shafran,* for appellants.

*Dyson, Schmidlin & Foulds Co., L.P.A., Mr. Robert Foulds* and *Mr. James J. Dyson,* for appellee Cleveland Public Library.

*Mansour, Gavin, Gerlack & Manos Co., L.P.A., Mr. Jeffrey L. Tasse* and *Mr. Jeffrey M. Embleton,* for appellee Morrison Company.

SWEENEY, J. The first question presented in this appeal is whether the library may successfully assert a sovereign immunity defense. The second question is whether Morrison was entitled to summary judgment.

In *Schenkolewski* v. *Metroparks System* (1981), 67 Ohio St. 2d 31 [21 O.O.3d 19], this court abrogated the sovereign immunity formerly enjoyed by a board of commissioners of a park district, a political subdivision analogous to the library herein, to the extent that the injury complained of arose from the board's exercise of a proprietary function. In the instant case the court below determined that operation of the bookmobile was a governmental as opposed to a proprietary function based on "the educational function libraries provide," and consequently held the library to be immune from suit.

Recent cases from this court involving municipalities have called into question the much criticized governmental-proprietary dichotomy and have effectively repudiated the traditional proprietary-governmental distinction.[1] See, *e.g., Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 29 ("these two categories have caused confusion and unpredictability in the law"); *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31. In *Enghauser, supra,* at paragraph two of the syllabus, the court redefined the scope of a municipality's liability as follows:

"Under this decision abolishing municipal immunity, no tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, municipalities will be held liable, the same as private corporations and persons, for the negligence of their employees and agents in the performance of the activities."

The *Enghauser* standard has been held to apply to counties as well as municipalities, *Zents* v. *Bd. of Commrs.* (1984), 9 Ohio St. 3d 204, and we see no reason not to apply the same standard to public libraries. We hold, therefore, that no tort action will lie against a public library for those acts or omissions involving the exercise of an executive or planning function or in-

---

[1] The current view was presaged in Judge Gibson's concurring opinion in *Hack* v. *Salem* (1963), 174 Ohio St. 383, 391 [23 O.O.2d 34], which characterized the cases applying the proprietary-governmental distinction as a "morass of conflict and confusion." *Id.* at 394. Judge Gibson reviewed the history of the distinction and then demonstrated graphically how the same function had variously been held to be governmental or proprietary. See *id.* at fn. 2, pages 400-402.

volving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, a public library will be held liable, the same as private corporations and persons, for the negligence of its employees and agents in the performance of their activities.

In the case at bar, appellants' complaint did not allege that the library had negligently acted or failed to act with respect to "the exercise of an executive or planning function involving the making of a basic policy decision." Rather, the allegations of negligence arose from the manner in which the library engaged "in a certain activity or function," specifically the operation of the bookmobile, for which the library may "be held liable, the same as private corporations and persons." Accordingly, the library could not successfully assert the defense of sovereign immunity, and the courts below erred in holding that the library was immune from suit in this instance.

The second issue raised in this appeal is whether the trial court properly granted summary judgment in favor of Morrison. Appellants made allegations sounding in negligence and strict liability, see *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317 [4 O.O.3d 466], against Morrison, contending that Morrison's failure to add school bus safety equipment to the bookmobile it sold the library amounted to negligence and the introduction of a defectively designed and unreasonably dangerous product into the stream of commerce.

The record indicates that Morrison made some minor modifications to the vehicle pursuant to specifications submitted by the library prior to delivery of the bookmobile. Morrison painted various signs and labels on the van, installed a heavy-duty floor, extended step platforms, and attached a grab handle to the vehicle's exterior.

The affidavit of H. Donald Morrison,[2] Morrison's secretary-treasurer, stated that Morrison "was not involved in any way in the manufacture, design or assembly" of the vehicle and further that the library's "specifications did not include a request for placement of either safety warning signs or lights other than what were already on the vehicle at the time of sale." In response to appellant's request for admissions, Morrison stated that "[n]o 'warning lights' other than those mandated by Federal and State law were installed on the vehicle to [Morrison's] * * * knowledge."

Civ. R. 56(E) states in pertinent part:

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allega-

---

[2] Appellants contend that the trial court erred in relying on H. Donald Morrison's affidavit as the "sole support" for granting Morrison summary judgment. There is no rule we are aware of that precludes a court's consideration of a supporting affidavit submitted by an interested party. Moreover, appellants did not attempt to rebut the assertions contained in the Morrison affidavit, arguing instead that the affidavit was insufficient.

tions or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Appellants did not submit affidavits or other evidentiary materials tending to show either that the subject vehicle failed to meet applicable state and federal safety standards or that even if the vehicle met these standards, it was nonetheless defective and unreasonably dangerous under the circumstances. Instead, appellants rested upon the allegations of their pleadings. Appellants argue that they were not required to respond because Morrison "never addressed the defectiveness issue in its Motion." As noted, however, Morrison stated that the vehicle met all the relevant safety requirements, which was an implicit denial of the existence of any defect. Under Civ. R. 56(E), appellants were required to "set forth specific facts showing that there [was] * * * a genuine issue for trial," but failed to meet this requirement.

In *Savransky* v. *Cleveland* (1983), 4 Ohio St. 3d 118, a case which also involved an adverse party's failure to respond to a motion for summary judgment, this court stated at page 119 as follows:

"In support of its motion for summary judgment, Central attached the deposition of a police officer who had interviewed the assailants. The deposition indicated that the structure in question did not play a part in the assailants' selection of a place to commit their crime. Appellant did not respond to Central's motion or offer evidence to rebut the officer's deposition. Thus, appellant rested upon the mere allegations of her pleadings, instead of setting forth specific facts showing that there was a genuine issue for trial. Accordingly, the court of appeals did not err in holding that 'in [the] absence of any evidence disputing the allegations of the defendant [Central], * * * summary judgment was properly granted.' "

To paraphrase *Savransky* with reference to the case at bar, the evidentiary documents submitted by Morrison indicated that the vehicle in question met all safety standards and was neither defective nor unreasonably dangerous. As the court of appeals observed, "[a]ppellant[s] * * * failed to demonstrate that such [safety] devices are required [or] that their absence makes the vehicle defective and dangerous for its intended use. Without some showing that the vehicle was defective there was no issue for a jury to determine and the granting of summary judgment was proper." We concur in the conclusion of the court of appeals on this question and, accordingly, affirm the summary judgment granted in favor of Morrison.

For the reasons hereinbefore stated, the judgment of the court of appeals is reversed as to the library and affirmed as to Morrison and the cause is remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part and*
*cause remanded.*

CELEBREZZE, C.J., W. BROWN, C. BROWN and J. P. CELEBREZZE, JJ., concur.

LOCHER and HOLMES, JJ., dissent in part.

HOLMES, J., dissenting in part. I must dissent from the majority's decision which abrogates the defense of sovereign immunity as it relates to public libraries. The majority's adoption of the *Enghauser* standard is particularly ill-advised when it is retrospectively applied to such institutions.

It is my continued view that if the defense of sovereign immunity must be abrogated at all, it should only be done prospectively.[3] This was never more evident than in the present case.

Public libraries, as entities, do not possess statutory authority to purchase liability insurance. R.C. 3375.401 only allows the purchase of liability insurance for individuals acting in their official capacities as trustees, officers, and employees of the library.

Until the General Assembly acts to correct this situation, today's decision places the burden of liability upon tax dollars that had been budgeted for general library purposes. A library's board of directors will now be forced to withhold money which would otherwise have been used for educational purposes in order to protect against the possible devastating effects of future lawsuits. This, in turn, will substantially hinder the educational role which public libraries play in Ohio.

LOCHER, J., concurs in the foregoing dissenting opinion.

---

[3] This view is in accord with the overwhelming weight of authority from other jurisdictions that have considered the question. See, *e.g., Evans* v. *Bd. of Cty. Commrs.* (1971), 174 Colo. 97, 482 P. 2d 968; *Smith* v. *State* (1970), 93 Idaho 795, 473 P. 2d 937; *Nieting* v. *Blondell* (1975), 306 Minn. 122, 235 N.W.2d 597; *Kitto* v. *Minot Park Dist.* (N.D. 1974), 224 N.W. 2d 795; *Merrill* v. *Manchester* (1974), 114 N.H. 722, 332 A. 2d 378; *Willis* v. *Dept. of Conservation & Economic Dev.* (1970), 55 N.J. 534, 264 A. 2d 34; *Holytz* v. *Milwaukee* (1962), 17 Wis. 2d 26, 115 N.W. 2d 618; *Oroz* v. *Bd. of Cty. Commrs.* (Wyo. 1978), 575 P. 2d 1155.