ZENTS, D.B.A. CURRY COPY CENTER OF AKRON, D.B.A. MAIN STREET
PRINT SHOP ET AL., APPELLANTS, *v.* BOARD OF COMMISSIONERS
OF SUMMIT COUNTY, APPELLEE, ET AL.

[Cite as Zents *v.* Bd. of Commrs. (1984), 9 Ohio St. 3d 204.]

(No. 83-6—Decided February 22, 1984.)

*Mr. James L. Wagner,* for appellants.

*Mr. Lynn C. Slaby,* prosecuting attorney, and *Mr. William E. Schultz,* for appellee.

WILLIAM B. BROWN, J. The basic issue presented in this case is whether the doctrine of governmental immunity bars appellants' suit against Summit County. With the limitations set forth in this opinion, this court holds that the doctrine of governmental immunity will no longer operate to insulate counties from liability for their tortious acts.

The doctrine of governmental immunity has been much discussed by this court as of late. This court has discussed this doctrine in the context of park districts,[1] municipal corporations,[2] school boards,[3] public libraries,[4] and the state[5] itself. It is of no surprise, then, that this court is now being asked to consider whether a county may assert governmental immunity as a defense. Indeed, such consideration may be overdue, for as Professor Antieau stated in his treatise, County Government (1982) 38-39, Section 38.04, Ohio is only one of seven states unaffected by either judicial repudiation of county government tort immunities or legislative re-definition of common law.

At this point, it is beyond question that governmental immunity, being a judicially created doctrine, may be judicially abolished. See *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 33; *Schenkolewski* v. *Metroparks System* (1981), 67 Ohio St. 2d 31, 36 [21 O.O.3d 19]; *Sears* v. *Cincinnati* (1972), 31 Ohio St. 2d 157, 161-162 [60 O.O.2d 113].

The justifications underlying the doctrine of governmental immunity have been discussed and much maligned, and, as such, repetition is unwarranted. See, *e.g.*, *Enghauser, supra,* at 33-34; *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 29-30. While a recitation of the historical background is unnecessary, a brief summary of the recent developments in this area will help to put the instant issue in its proper perspective.

In *Schenkolewski* v. *Metroparks System, supra,* this court held that the defense of governmental immunity was not available to a board of commissioners of a park district established pursuant to R.C. Chapter 1545 where liability is alleged to have arisen out of the exercise of a proprietary function. The court reasoned at page 37 as follows:

"When a park district's activities go beyond governmental functions, *i.e.,* when it acts in a proprietary nature, there is little or no justification for extending the benefits of the state's sovereign immunity to it. As to such activities the conclusion is justified that the park district is more than an arm of the state. Certainly a park district cannot be deemed 'simply a division of the executive branch' of the state, nor is it 'dependent upon funds appropriated by the legislature.' * * * Having entered into activities ordinarily reserved to the field of private enterprise, a park district should be held to the same responsibilities and liabilities as are private citizens. * * *" (Citations omitted.)

---

[1] *Schenkolewski* v. *Metroparks System* (1981), 67 Ohio St. 2d 31 [21 O.O.3d 19]; *Marrek* v. *Cleveland Metroparks Bd. of Commrs.* (1984), 9 Ohio St. 3d 194.

[2] *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26; *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31; *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118; *Dickerhoof* v. *Canton* (1983), 6 Ohio St. 3d 128.

[3] *Carbone* v. *Overfield* (1983), 6 Ohio St. 3d 212.

[4] *Mathis* v. *Cleveland Public Library* (1984), 9 Ohio St. 3d 199.

[5] *Boggs* v. *State* (1983), 8 Ohio St. 3d 15.

Subsequent to *Schenkolewski,* this court was presented with two cases that afforded the opportunity to reconsider the vitality of the governmental-proprietary distinction. In *Haverlack* v. *Portage Homes, Inc., supra,* the efficacy of this distinction was seriously questioned, the court repudiating the distinction by noting at page 29 that " 'it is impossible to reconcile all of the decisions of this court dealing with the subject of governmental and proprietary functions in relation to a municipality.' "

Thereafter, in *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd., supra,* this court stated in paragraph one of the syllabus that "* * * municipal corporations [are] subject to suit for damages by individuals injured by the negligence or wrongful acts or omissions of their agents or employees *whether such agents and employees are engaged in proprietary or governmental functions.*" (Emphasis added.)

It is true that both *Haverlack* and *Enghauser* involved municipal corporations. This factor is not dispositive, however, for this court in *Schenkolewski* applied the governmental-proprietary distinction—a distinction which had previously been applied only to municipalities—to a subdivision of the state. In so doing, this court treated the park district as it did a municipality. Inasmuch as this court has repudiated the governmental-proprietary distinction with respect to municipalities, it necessarily follows that it repudiates it as to political subdivisions of the state as well.

In the instant case, this court is also dealing with a political subdivision of the state—the county. The rationale for repudiating the governmental-proprietary distinction and for abrogating governmental immunity as to municipalities applies with equal force to counties.[6] The justifications for allowing suit against a tortfeasor are as compelling whether that tortfeasor be a municipality or a county.

Treating a county board of commissioners in the same fashion as a municipality is not uncommon. As Professor Reynolds observed in his treatise, Local Government Law (1982) 705-706, Section 197:

"* * * 'public quasi-corporations' * * * such as counties, townships, and special function districts—are often technically regarded as arms of the state, their tort immunity might logically be governed by the same rules as apply to the state—and certainly the abolition of tort immunity as to the state will, if nothing to the contrary is provided, also terminate the immunity of these governments. But such governments are often, in reality, closer in nature to municipalities than to the state; and court decisions and statutes abrogating municipal immunity commonly cover such quasi-corporations as counties and school districts." (Citations omitted.)

If this court were to hold that a county is immune from suit, a most in-

---

[6] It is interesting to note that the leading English case establishing tort immunity for local governments—*Russel* v. *Men of Devon* (1788), 100 Eng. Rep. 359—and cited similarly by courts in this country, involved a county.

congruous situation would result. A person injured by the negligence of a municipality, the state,[7] a park district or a school board would be able to seek redress, but if that same individual were to be injured in the same fashion by the negligence of the county, suit would be precluded. It would indeed be invalid to treat counties and municipalities differently with respect to claims arising out of the exercise of the same function. This court's holding today fills the gap in liability that heretofore existed between the state, municipalities and political subdivisions.

By the same token, a county should not be subject to greater liability than a municipality. Applying the standard of liability for municipalities developed in *Haverlack* and in *Enghauser* to the instant case, this court holds that no tort action will lie against a county for those acts or omissions involving the exercise of an executive or planning function or involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, a county will be held liable, the same as private corporations and persons, for the negligence of its employees and agents in the performance of their activities.

Likewise, a county, as a municipality, will not be held liable for all harm that results from its activities; it is only to those harms which are torts that counties may now be held liable. Simply put, counties are, by this decision, subject to the same rules as private persons or corporations if a duty has been violated and a tort has been committed. Additionally, a county will not be subject to liability where a statute provides immunity. (Cf. *Haverlack* v. *Portage Homes, Inc., supra; Dougherty* v. *Torrence* [1982], 2 Ohio St. 3d 69; *King* v. *Williams* [1983], 5 Ohio St. 3d 137.)

For the foregoing reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

LOCHER and HOLMES, JJ., dissent.

LOCHER, J., dissenting. I agree with the dissent of Justice Holmes as it applies to the relationship between county governments and the state, and the reasoning therein. I also dissent for the reasons set forth in my opinions

---

[7] Suit against the state would properly be commenced in the Court of Claims pursuant to the Court of Claims Act. R.C. Chapter 2743.

in *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 31, and *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 124.

HOLMES, J., dissenting. I dissent upon the basis of prior dissents set forth in *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 31; *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 37; and *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 126. Further, my dissent here regarding the judicial abrogation of sovereign immunity as it generally would relate to county governments is with much greater emphasis because this court is now dealing with a governmental agency which has historically been a direct arm and subdivision of the state of Ohio.

The majority of this court has failed to recognize the distinctions between county and municipal governments. The existence and authority of county governments have traditionally emanated from the state. Conversely, municipalities have obtained their authority from their respective charters or through corporate existence.

In Section 1, Article X of the Ohio Constitution, the General Assembly is empowered by general law to provide for the organization and government of county entities throughout the state. Municipal corporations, however, are governed by Article XVIII of the Ohio Constitution and, pursuant to Section 2 of that article, specific provisions provide for the incorporation and government of municipalities. In addition, Section 3 of Article XVIII grants municipalities the authority to exercise all powers of local self-government. Thus, the constitutional sources of the authority for counties and municipalities have been, throughout Ohio's history, distinctly separate in nature.

This distinction, as pointed out by appellee, was recognized by the Sixth Circuit Court of Appeals in the case of *Western Pa. Natl. Bank* v. *Ross* (C.A. 6, 1965), 345 F. 2d 525, which stated:

"In Ohio, a county is not regarded as a body corporate like a municipality, but rather as a political subdivision of the state. It enjoys the same immunity from suit as the state. It may not be sued except as permitted by statute. Statutes creating liability of counties are strictly construed since they are in derogation of common law." *Id.* at 526.

I am aware that R.C. 301.22 provides that a county may become a body politic and corporate by taking the overt action of adopting a charter or an alternative form of county government. However, in my view, this does not alter the fact that counties generally remain a basic extension of state government. The statute merely provides counties the opportunity to obtain charters or an alternative form of government, and relatively few have availed themselves of such avenues of change.[8]

Finally, if the immunity of these subdivisions of state government is to be

---

[8] No county has adopted an alternative form of county government, and only one county, *i.e.,* Summit, has adopted a county charter form of government.

abrogated, then such action should be taken by the General Assembly and not this court. I cannot emphasize enough that with the distinctions between county and municipal governments, the abrogation of county governmental immunity should be within the General Assembly's prerogative rather than that exercised by this court.

Accordingly, I would affirm the decision of the court of appeals.

LOCHER, J., concurs in the foregoing dissenting opinion.