LONGFELLOW, APPELLANT, *v.* CITY OF NEWARK, APPELLEE.

[Cite as Longfellow *v.* Newark (1985), 18 Ohio St. 3d 144.]

(No. 83-1338—Decided July 10, 1985.)

David B. Stokes, for appellant.

Bricker & Eckler, Charles H. Walker and Kent D. Stuckey, for appellee.

Per Curiam. The issue we face in the appeal sub judice is whether the city is subject to dismissal as a party on the basis of sovereign immunity. We hold that the city was erroneously dismissed as a party.

This court abolished the doctrine of sovereign immunity for municipal corporations in Haverlack v. Portage Homes, supra. As we stated in Haverlack, supra, at 30:

"A municipal corporation, unless immune by statute, is liable for its negligence in the performance or nonperformance of its acts."

We subsequently extended and refined the abolition of sovereign immunity for municipal corporations in Enghauser Mfg. Co. v. Eriksson Engineering Ltd. (1983), 6 Ohio St. 3d 31, where we held at paragraph two of the syllabus:

"* * * [N]o tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, municipalities will be held liable, the same as private corporations and persons, for the negligence of their employees and agents in the performance of the activities." See, also, Carbone v. Overfield (1983), 6 Ohio St. 3d 212; Mathis v. Cleveland Public Library (1984), 9 Ohio St. 3d 199; Zents v. Bd. of Commrs. (1984), 9 Ohio St. 3d 204; and Reynolds v. State (1984), 14 Ohio St. 3d 68.

As recently as this court's unanimous decision in Wilson v. Neu (1984), 12 Ohio St. 3d 102, the principles of Enghauser, supra, were viewed as controlling a claim against a municipal corporation. It is therefore obvious that, at this stage, the city may not escape liability for the wrongdoing or tortious activity of its agents or employees on the basis of sovereign immunity absent a specific grant of statutory immunity. See, e.g., Adams v. Peoples (1985), 18 Ohio St. 3d 140.

The city argues, however, that its dismissal was proper since the alleged injuries to appellant herein did not result from the execution of a particular governmental policy. This argument is unpersuasive in view of *Enghauser*. Having made the decision to engage in an activity — maintain a police force — the city must face liability as would a private corporation or entity. *Enghauser, supra,* at paragraph two of the syllabus. That being the case, as long as appellant is able to establish the tortious activity of the police officer, the city is potentially liable for the wrongdoing of its agents or employees in the performance of their duties.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY, C. BROWN and DOUGLAS, JJ., concur.

LOCHER, HOLMES and WRIGHT, JJ., dissent.

LOCHER, J., dissenting. My position on the abrogation of municipal and sovereign immunity is set forth in the dissents to *Zagorski* v. *South Euclid-Lyndhurst Bd. of Edn.* (1984), 15 Ohio St. 3d 10, 13; *Mathis* v. *Cleveland Public Library* (1984), 9 Ohio St. 3d 199, 203; *Zents* v. *Bd. of Commrs.* (1984), 9 Ohio St. 3d 204, 207; *O'Brien* v. *Egelhoff* (1984), 9 Ohio St. 3d 209, 210; *Carbone* v. *Overfield* (1983), 6 Ohio St. 3d 212, 214; *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 124; *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 37; and *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, 31.

In order to maintain the zeal of our police and the economic well-being of our municipalities, I believe it is important to minimize "* * * interference by a private individual, via the judicial process, in the administration of an executive function, such as law enforcement, which has been entrusted to executive entities by the community as a whole." Mathes & Jones, Toward a "Scope of Official Duty" for Police Officers in Damage Actions (1965), 53 Geo. L.J. 889, 892. See, also, Jaffe, Suits Against Governments and Officers: Damage Actions (1963), 77 Harv. L. Rev. 209.

Accordingly, I reaffirm my position on the issue of municipal and sovereign immunity, and therefore dissent.

WRIGHT, J., concurs in the foregoing dissenting opinion.

HOLMES, J., dissenting. While it has been my continuing position that municipalities should enjoy absolute immunity,[1] now, due to my firm com-

---

[1] See my dissenting opinions in *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, 37-38; *Strohofer* v. *Cincinnati* (1983), 6 Ohio St. 3d 118, 126; *Dickerhoof* v.

mitment to *stare decisis* as well as this court's recent pronouncements in *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, and its progeny, I propose what I believe is a well-reasoned approach to determine the ambit of future liability for the cities of this state. This approach strikes a proper balance between justly compensating those persons who have suffered harm in certain defined situations and protecting local governments from an ever-increasing number of lawsuits.

The United States Supreme Court has reappraised the subject of municipal liability in light of the Congressional enactment of Section 1983, Title 42, U.S. Code.[2] The federal statute imposes liability on "every person" who under color of state law subjects another citizen to a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." In *Monell* v. *Dept. of Social Services of New York City* (1978), 436 U.S. 658, the court held that municipal corporations are encompassed within the purview of the provision. Although I recognize certain differences between a state common-law action and this type of federal suit, it is my view that this court should look to the decisions of the Supreme Court for guidance regarding the civil liability of municipalities.

The initial case concerning this particular issue was *Monell, supra,* which involved a class action filed on behalf of pregnant employees from two governmental agencies under the supervision of the city of New York. The essence of the complaint was that the agencies had, as a matter of official policy, compelled pregnant employees to take leaves of absence without compensation before such furloughs were medically required. The court held that municipalities could be liable for the execution of a government *policy* or *custom* which violates the federal statute. The policy or custom need not be officially promulgated by lawmakers but the extent of liability includes those acts which may be fairly characterized to represent the official policy of the local government. Thus, the ruling is limited in that a city cannot be held liable under a *respondeat superior* theory solely because it employs a tortfeasor. *Monell, supra,* at 693-694.

Two years later, the court reaffirmed *Monell* and further held that municipalities may not assert a qualified immunity, defense, or privilege based upon the good faith of the city official involved in the controversy.

---

*Canton* (1983), 6 Ohio St. 3d 128, 131; *Carbone* v. *Overfield* (1983), 6 Ohio St. 3d 212, 214-215 (board of education); *Mathis* v. *Cleveland Public Library* (1984), 9 Ohio St. 3d 199, 203 (public library); *Zents* v. *Bd. of Commrs.* (1984), 9 Ohio St. 3d 204, 208-209 (county government); *O'Brien* v. *Egelhoff* (1984), 9 Ohio St. 3d 209, 211-212.

[2] The federal Act provides in part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *"

*Owen* v. *Independence* (1980), 445 U.S. 622. The court voiced considerable concern over the possibility that a city might be held liable for the actions of a public official which were not taken pursuant to a municipal custom or policy. Therefore, based on the equitable principle of loss-spreading, the court found the relative fault of each person or entity to be a factor in distributing the costs of official misconduct. This allocation theory was stated as follows:

"The innocent individual who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury. The offending official, so long as he conducts himself in good faith, may go about his business secure in the knowledge that a qualified immunity will protect him from personal liability for damages that are more appropriately chargeable to the populace as a whole. And the public will be forced to bear only the costs of injury inflicted by the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.' " *Id.* at 657 (quoting *Monell, supra,* at 694).

The import of these decisions is clear. Absent statutory immunity, when a municipality implements a policy, the execution of which infringes upon the rights of an individual, the municipal corporation is subject to liability for its actions. The city is also liable for an unlawful custom, even though the custom has not received "formal approval through the body's official decisionmaking channels." *Monell, supra,* at 691. In each situation, a city official is performing an act under a governmental policy or custom which ultimately causes harm to another. However, a municipality cannot be liable for the actions of a subordinate by means of *respondeat superior.*

When a court reviews the conduct of a local government under this proposed theory, it does not look to second-guess the city's resolution concerning the competing policy considerations which resulted in the policy or custom. Rather, the court is to merely ascertain whether the municipality has conformed to federal and state law. See *Owen, supra,* at 649.

Turning to the facts before this court, it is my view that the city of Newark cannot be held liable as the police officer did not act pursuant to a municipal policy or custom in making the arrest without a valid warrant. Appellant does not argue that she was arrested as part of a city-wide policy or custom which supported unlawful arrests. Cf. *Ellis* v. *Chicago* (N.D. Ill. 1979), 478 F. Supp. 333. See, also, *Familias Unidas* v. *Briscoe* (C.A.5, 1980), 619 F. 2d 391; Seng, Municipal Liability for Police Misconduct (1980), 51 Miss. L. J. 1. Certainly, one could surmise that the officer actually *violated* official policy in making the illegal arrest.

Accordingly, I would affirm the trial court's dismissal of the city under the facts presented.