Azalean STALLWORTH, and the Estate
of Albert Stallworth,
Plaintiffs–Appellees,

v.

CITY OF CLEVELAND,
Defendant–Appellant,

Sanford Currie, Lawrence Forgach, Raymond Gercar, William Hanton, Joseph Mismas, and Reginald Turner, in their official capacities, Defendants.

No. 88–3482.

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1989.

Decided Jan. 11, 1990.

Rehearing and Rehearing En Banc
Denied Mar. 5, 1990.

Keith E. Spero, Alan H. Kraus, Sperio & Rosenfield, Cleveland, Ohio, for plaintiffs-appellees.

Kathleen A. Martin, City of Cleveland Law Dept., Office of Director of Law, Cleveland, Ohio, for defendants-appellants.

Before KEITH and WELLFORD, Circuit Judges, and GILMORE, District Judge.[*]

GILMORE, District Judge.

This case arises from an incident that occurred June 13, 1985, between Plaintiff Azalean Stallworth and Defendant Sanford Currie, a Police Officer for the City of Cleveland.

On the date in question, Plaintiff was parked illegally outside the Bolton Elementary School in Cleveland, waiting for her grandchild. After she picked up the child, Defendant Currie, who was in a marked police car, asked her to move her car. Allegedly, she did not move quickly enough to satisfy officer Currie, and he opened plaintiff's car door, hit her in the mouth, and arrested her for failing to obey a lawful order and resisting arrest.

At the time of the incident, Officer Currie was on his regular shift, but outside his assigned zone. Additionally, he had his girlfriend and her daughter in the car, and was illegally parked himself. Officer Currie did not have permission to be outside his assigned zone. He was violating departmental rules by having civilians in his car and by failing to communicate his whereabouts to the police dispatcher.

Mrs. Stallworth sued the City of Cleveland, Currie, and other police officials under 42 U.S.C. § 1983, alleging unreasonable arrest and prosecution, abuse of process and excessive use of force. She included state claims of false arrest, malicious prosecution, abuse of process, and assault and battery. Plaintiff also brought all claims except the § 1983 claim and state law assault claim against Raymond Gercar, Richard Forgach, and Joseph Mismas, ranking Cleveland police officers, who arrived at the scene after the confrontation between Stallworth and Currie. She brought the § 1983 claim against Currie, the City of Cleveland, its former police chief, William Hanton, and its former safety director, Reginald Turner. Under state law, on the theory of *respondeat superior*, Plaintiff also sued for the alleged torts of Currie, Gercar, Forgach, and Mismas. Finally, Plaintiff's husband, Albert Stallworth, made a claim under state law for loss of consortium. At the time of trial, he was deceased and his estate continued the prosecution of his state law claim.

For reasons set forth herein, we affirm the determination of the district court in regards to Mrs. Stallworth's claims. However, as to the estate of Mr. Stallworth, where damages were awarded for loss of consortium, we reverse.

I

Appellee's claims were tried in three phases. At the close of phase one, in response to special interrogatories, the jury found that Officer Currie had used excessive force, which shocked the conscience, against Mrs. Stallworth. It also found that she had suffered physical injuries, proximately caused by excessive force, but that Officer Currie had not made intentional physical contact with Mrs. Stallworth.

Over the objection of Appellant, the court determined that, in light of the jury instructions, the jury's answers were inconsistent, and the court instructed them to continue their deliberations. After further deliberation, the jury found that Officer Currie, while acting within the scope of his employment, had made intentional physical contact with Mrs. Stallworth.

In addition, the court directed a verdict for the officers who arrived at the scene after plaintiff was placed under arrest. The trial judge denied a directed verdict for the city on the state law claims based on *respondeat superior*.

At the close of phase two of the trial, the jury found that the City of Cleveland had a policy or custom of deliberate indifference

---

[*] The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

to or tacit approval of the use of excessive force by its police officers, including Officer Currie. Nevertheless, it found that such policy or custom was not the proximate cause and moving force for Officer Currie's conduct. William Hanton, Chief of Police, Reginald Turner, Safety Director, and the City were found not liable for any claims arising under 42 U.S.C. § 1983.

At the close of phase three of the trial, the jury determined that Officer Currie and the City of Cleveland were liable to Mrs. Stallworth in the amount of $40,000. The liability of the City of Cleveland was based upon *respondeat superior*. The jury also awarded Plaintiff's husband $3,000 for loss of consortium.

The trial court reduced the jury award by $669.65, pursuant to Ohio Law requiring the set-off of collateral benefits, and awarded pre-judgment interest of $11,238.33 against the city. He also added pre-judgment interest in the amount of $856.66 to the consortium claim.

The City presents four issues on appeal: 1) whether the trial court erred in requiring the jury to deliberate a second time, since the original findings of fact were not inconsistent, 2) whether the trial court erred in permitting the jury to consider various theories under the doctrine of *respondeat superior*, since Currie was acting outside the scope of his employment; 3) whether the trial court abused its discretion in granting prejudgment interest; and 4) whether the trial court erred in failing to dismiss the loss of consortium claim.

## II

The first question is whether the trial court erred in requiring the jury to deliberate a second time because it found the findings of fact were inconsistent. The jury answered several interrogatories. Interrogatory Number 1 asked whether Officer Currie had used excessive force that shocked the conscience in his confrontation with Plaintiff. The jury answered yes. Interrogatory Number 2 asked whether Plaintiff had established, by a preponderance of the evidence, that she suffered physical injuries proximately caused by De-

fendant Currie's use of excessive force. To this also the jury answered yes. Interrogatory Number 6 asked specifically, "With respect to the state law claim of assault and battery, has the plaintiff established that Defendant Currie intentionally made physical contact with Mrs. Stallworth without her consent?" To this, the jury answered no.

The trial court determined that finding Currie had used excessive force was inconsistent with finding that Currie had not intentionally made contact with Mrs. Stallworth. The Court instructed the jury that their responses were inconsistent and directed them to deliberate further. The jury then changed its response to the state law claim of assault and battery, finding instead that Currie had intentionally made nonconsensual, physical contact with Mrs. Stallworth. Having found this, the jury then determined that Officer Currie was acting within the scope of his employment. Consequently, it found the City liable under the doctrine of *respondeat superior*.

In examining the findings of a jury, a trial court must attempt to harmonize responses to interrogatories submitted under Fed.R.Civ.P. 49. In *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), the Court stated:

> [I]t is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them:..

*Id.* at 119, 83 S.Ct. at 666.

In *Waggoner v. Mosti*, 792 F.2d 595 (6th Cir.1986), this court affirmed that duty. There, we stated:

> Nevertheless, it is incumbent upon a trial court, as well as an appellant court, "to reconcile the answers if possible under any view of the evidence of the case." *Sylvestri v. Warner & Swasey Co.*, 398 F.2d 598, 603 (2d Cir.1968) ... (citations omitted).

*Id.* at 597.

The City contends that the trial court erred in not reconciling the jury's initial findings. It argues that reconciliation was possible because the evidence showed ac-

tions other than physical contact—yelling at the plaintiff to move her car, banging on the hood of the car, yanking the car door open—which the jury could have determined constituted excessive force. The City claims that, had the findings been properly reconciled, the City would not be liable under *respondeat superior* for Currie's assault and battery.

Plaintiff responds that the City's argument rests on a limited and narrow reading of the jury instructions. She contends that the jury instructions required the jury to find that Currie intentionally and unjustifiably punched her in the mouth in order to find that Currie used excessive force. She cites the following instructions as an example:

> Mrs. Stallworth claims that excessive force was used by defendant Currie while he was investigating her alleged improper parking and failure to obey the officer's order to move her car. Specifically she claims he punched her, breaking her dentures and damaging her mouth with his fist.

> If you find from the preponderance of the evidence that Officer Currie, without reasonable justification, punched Mrs. Stallworth in the mouth with his fist and thereby used greater force than was reasonably necessary in the circumstances, and that his conduct shocks the conscience, such conduct infringes on her constitutionally protected right to be free of excessive force and you must find Officer Currie liable for violating that constitutional right.

> However, if you find that Mrs. Stallworth has failed to convince you from a preponderance of the evidence that Officer Currie punched her thereby using greater force than was reasonably necessary and that his conduct does not shock the conscience, then your verdict must be for officer Currie.

It is Plaintiff's position that the instructions do not permit the jury to consider force other than that which caused her

physical injuries in determining whether Officer Currie used excessive force. Consequently, the jury could not properly consider nonphysical force, such as banging on the hood and yelling.

It is clear to this court that the language of the instructions does not permit the jury to conclude that Currie knowingly and intentionally used excessive force, but did not punch Mrs. Stallworth. Moreover, the jury found that plaintiff suffered physical injuries as a result of the excessive force: banging on the hood and yelling at plaintiff could not have caused physical injuries. Therefore, it is clear to this court that the trial court accurately determined that the jury's findings were inconsistent. Returning the matter to the jury for further consideration was proper, and there is no basis for reversal on issue number 1.

## III

The second issue on appeal is whether the City can be held vicariously liable for assault and battery committed by one of its officers.[1] The City argues that the trial court erred in failing to direct a verdict for the city on the *respondeat superior* claim. It contends that *respondeat superior* raises only a question of law, and that no factual question should have gone to the jury.

Under Ohio law, an employee is not acting within the scope of his employment unless his conduct is performed to further the business of the employer. *Copperman v. University Surgical Assoc,* 32 Ohio St.3d 191, 513 N.E.2d 288 (1987). Defendant claims that it strictly limits police officers' use of physical force to three situations: 1) making an arrest; 2) preventing the escape of a criminal; and 3) protecting a life. Because striking plaintiff did not fall within one of these categories, the City contends that Officer Currie was acting beyond his authority as a police officer, and was not furthering the business of the City. As a matter of law, the City argues, it cannot be held vicariously liable under

---

1. Claims under 42 U.S.C. § 1983 were dismissed, and so there is no issue on appeal under § 1983.

the doctrine of *respondeat superior.* Consequently, the City contends it should have been granted a directed verdict on this claim.

Plaintiff responds that the standard for a directed verdict in this case could only be satisfied if, viewing all the evidence presented and the inferences reasonably drawn therefrom in the light most favorable to Plaintiff, the jury could reasonably conclude that Officer Currie was not acting within the scope of his employment. Plaintiff argues that reasonable people could conclude that Currie *was* acting within the scope of his employment.

The court agrees with Plaintiff that reasonable people could conclude that Currie was acting within the scope of his employment. Therefore, the court finds no error in putting to the jury the question of the City's liability under *respondeat superior.*

In *Molton v. City of Cleveland,* 839 F.2d 240 (6th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1989), this court held that a city could be vicariously liable for the intentional, tortious misconduct of its police officers when that conduct was "expectable." The *Molton* court said:

> The City can be held liable for police misconduct under *respondeat superior* in the same manner as a private corporation. *Longfellow v. City of Newark,* 18 Ohio St.3d 144, 480 N.E.2d 432 (1985); *Enghauser Mfg. Co. v. Erickson Engineering Ltd.,* 6 Ohio St.3d 31, 451 N.E.2d 228 (1983). Contrary to the City's position:
>
> > A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act is not unexpectable in view of the duties of the servant.
>
> Restatement (2d) of Agency § 245 (1958). *See also Wiebold Studio, Inc. v. Old World Restorations, Inc.,* 19 Ohio App.3d 246, 250–51, 484 N.E.2d 280 (1985). The actions of the officers were "not unexpectable" given their duties as police officers.

*Id.* at 249–50.

The *Molton* court found that police officers' beating of a handcuffed prisoner was not "unexpectable," given their duties as police officers.

Whether Officer Currie was acting within the scope of his employment is determined by whether his actions were expected. This determination is a question of fact for the jury. The trial court properly placed this issue before the jury, and the jury found that Currie was acting within the scope of his employment. The court committed no error.

## IV

 The next issue is whether the trial court abused its discretion in granting prejudgment interest. In phase three of the trial, the jury awarded Plaintiff $40,000 for damages and Plaintiff's husband $3,000 for loss of consortium. The trial court then awarded Plaintiff prejudgment interest against the City. It reduced the $40,000 jury award by $669.65, pursuant to an Ohio statute requiring set-off of collateral benefits, but added prejudgment interest in the amount of $11,238.33. It also awarded prejudgment interest of $856.66 on the consortium claim.

Ohio Rev.Code Ann. § 1343.03(A) (Baldwin 1988) covers the subject of prejudgment interest when the rate is not stipulated. Section 1343.03(A) provides in pertinent part:

> .... when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum.
>
> ....

Section 1343.03(B) provides that interest on a civil action based upon tortious con-

duct shall be computed from the date of the judgment. However, there is a statutory exception to this rule stated in § 1343.03(C).

Section 1343.03(C) covers prejudgment interest in tort cases. It provides:

> Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.

The most recent Ohio case discussing the standards to be applied in interpreting Section 1343.03(C) is *Kalain v. Smith*, 25 Ohio St.3d 157, 495 N.E.2d 572 (1986). There the court stated:

> A party has not "failed to make a good faith effort to settle" under R.C. 1343.-03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer.

The decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court. This court will not overturn a finding on this issue unless the trial court's actions indicate an abuse of discretion.

495 N.E.2d at 574 (citation omitted).

In reaching this holding, the Ohio court followed *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985), where the court, after finding that awards of prejudgment interest are within the sound discretion of the trial court, defined abuse of discretion under Ohio law. Quoting *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984), the court said:

> "[A]n abuse of discretion involves far more than a difference in ... opinion.... The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias ..."

482 N.E.2d at 1252.

In *Molton v. City of Cleveland*, 839 F.2d 240 (6th Cir.1988), this court recognized that prejudgment interest is available on a tort claim. It said: "Prejudgment interest is available on a state claim through Ohio Rev.Code § 1343.03(C), and whether it is awarded is addressed to the discretion of the district court ...[2] *Id.* at 250.

**2.** It is true that the court followed the paragraph above by stating that, generally, prejudgment interest is not permitted under Ohio law where the claim is unliquidated and where damages are not reasonably ascertainable prior to trial. In support of this statement, the court cited *Coal Resources, Inc. v. Gulf & Western Ind.*, 756 F.2d 443, 451 (6th Cir.1985). *Coal Resources*, however, was a breach of contract case. It is well established under Ohio law that, in breach of contract actions, damages must be liquidated for there to be an award of prejudgment interest. *Worrell v. Multipress, Inc.*, 45 Ohio St.3d 241, 543 N.E.2d 1277 (1989). However, in cases involving tortious conduct, Ohio law does not require that damages be liquidated for there to be an award of prejudgment interest. *Kalain v. Smith*, 25 Ohio St.3d 157, 495 N.E.2d 572 (1986); *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985); *Beynon v. K–Mart Corp.*, 839 F.2d 283 (6th Cir.1988). The only statutory authority under Ohio law for prejudgment interest in tort claims is found in § 1343.03(C), and it does not require that damages be liquidated.

In *Beynon v. K–Mart Corp.*, 839 F.2d 283 (6th Cir.1988), this court recognized that a successful personal injury claimant was entitled to the award of prejudgment interest if the defendant had failed to make a good faith attempt to settle the case. The court held there that the evidence did not support the trial court's finding that the defendant had made a good faith effort to settle the case and, based on that fact, reversed the award of prejudgment interest.

Most recently, in *Worrell v. Multipress, Inc.*, 45 Ohio St.3d 241, 543 N.E.2d 1277 (1989), the court considered the question of prejudgment interest again, and distinguished between contract and tort claims. It held that on a breach of contract claim, unless there was an amount due and payable, capable of ascertainment by computation or reference to well-established market values, no prejudgment interest could be paid. With reference to prejudgment interest on a tort claim, the court held that prejudgment interest would be available under § 1343.03(C), if there was lack of good faith in settlement negotiations by the party charged with paying. It said: "It is within the sound discretion of the trial court to determine 'whether a party's settlement efforts indicate good faith.' . . . Based on the record, we conclude the trial court did not abuse its discretion in denying prejudgment interest pursuant to R.C. 1343.03(C)." *Id.* 543 N.E.2d at 1285 (citation omitted).

It thus appears clear that, under Ohio law, prejudgment interest in tort cases may be allowed if the trial court finds that the party to be charged did not in good faith negotiate a settlement of the case. It is clear that the standard of review for an appellate court is abuse of discretion.

Here, the trial judge, an experienced Ohio judge, found that the defendant, City of Cleveland, did not act in good faith, and that it did not rationally evaluate its risk of potential liability. It examined with care whether the City had acted on a good faith, objectively reasonable belief that it had no liability, and concluded that the City failed to evaluate its risk of liability in good faith. The trial court held:

The court finds that the defendant City of Cleveland's actions in this case reflect the fact that they did not rationally evaluate their risk of potential liability. The defendants argue that the basis for their belief of non-liability on the state pendant law claim was that Officer Currie was acting outside the scope of his employment. However, the City of Cleveland persisted in the criminal prosecution of the plaintiff in the face of the repeated attempts of the plaintiff's counsel to avoid the criminal trial procedure. The plaintiff's counsel at the hearing, accurately argued that the City attempted to "have its cake and eat it too." On the one hand, the City of Cleveland viewed Officer Currie's actions within the scope of employment for the purpose of criminal prosecution, but on the other hand viewed Officer Currie's actions as outside his scope of employment for purposes of defending the § 1983 action. *Consequently, the Court finds that the City of Cleveland's claim of good faith belief that Officer Currie was operating outside the scope of his employment is belittled by their overall conduct in this case.*

Jn.App. 161, 172 (emphasis added).

It is clear to the court that the trial judge did not abuse his discretion in finding a lack of good faith in awarding interest. A fair reading of Ohio law indicates that the City was using an improper standard for evaluating whether Currie was acting within the scope of his employment. The same city had lost a suit before this court, raising the identical issue, within the past year (*See Molton v. City of Cleveland, supra*). This case should have indicated to the City that it might face some liability, and that serious settlement negotiations were indicated.

The trial court's ruling was neither unreasonable, arbitrary, unconscionable, nor an abuse of discretion. Therefore, the trial court is affirmed in awarding prejudgment interest.

V

■ The final issue is whether the trial court properly had jurisdiction over Mr.

Stallworth's loss of consortium claim. Mr. Stallworth's federal claims were dismissed before trial, and his consortium claim proceeded on the basis of pendent jurisdiction. Maintenance of consortium as a pendent claim when the federal claim is dismissed out has not been ruled on by this circuit. There is, however, a body of relevant Supreme Court decisions.

In examining the question, the initial case to consider is *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). There, the Supreme Court held that federal jurisdiction over a pendent state claim exists whenever it shares a "common nucleus of operative facts" with the plaintiff's federal claim. That language, Appellant argues, does not authorize a party with *no* federally cognizable claim to append a state law claim to another party's federally cognizable claim.

Though it is clear that Mr. Stallworth was properly joined in the suit when he asserted a federal claim, Appellant's interpretation of *Gibbs* is well supported by a review of Supreme Court decisions, which indicate that the Court is not amenable to pendent party jurisdiction.

Since *Gibbs*, the Supreme Court has visited the question of pendent party jurisdiction several times. Initially, in *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), a class action, the Court, citing *Gibbs*, refused to allow plaintiff to append his claim, worth less than the jurisdictional minimum of $10,000, to the jurisdictionally adequate diversity claims of other members of the plaintiff class. Similarly, in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), in which plaintiffs brought a federal claim against individual defendants, and then sought to append a related state claim against a separate party, Spokane County, Washington, the Court refused to read *Gibbs* as allowing pendent jurisdiction over a party. The Court stated: "[T]he addition of a completely new party would run counter to the well-established principle that federal courts ... are courts of limited jurisdiction marked out by Congress." *Id.* at 15, 96 S.Ct. at 2420.

Thereafter, in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), the Court again limited the scope of pendent party jurisdiction, refusing to allow a plaintiff in a proper diversity action to append nondiverse defendants. Of *Gibbs*, the Court said:

> ... *Gibbs*, does not end the inquiry into whether a federal court has power to hear the nonfederal claims along with the federal ones. Beyond this constitutional minimum, there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, ...

*Id.* at 373, 98 S.Ct. at 2402.

Most recently, in *Finley v. U.S.*, — U.S. ——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the Court reaffirmed its unwillingness to apply pendent jurisdiction to parties. In that case, plaintiff's decedents were killed when their plane struck electric power lines on an approach to a city-run airfield in San Diego. Plaintiff sued the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) for alleged negligence. She subsequently moved to amend her complaint to add state tort law claims against the city and the utility company that maintained the power lines. No independent basis for federal jurisdiction existed as to either of these parties. The trial court granted the motion to amend under pendent jurisdiction.

The Supreme Court reversed and reaffirmed the *Aldinger* approach to pendent party jurisdiction. The Court stated: "... *Aldinger* indicated that the *Gibbs* approach would not be extended to the pendent-party field, and we decide today to retain that line." *Finley*, 109 S.Ct. at 606. In analyzing the jurisdictional claim, the Court applied the *Kroger* test, a factor analysis, for exercising pendent party jurisdiction. The first factor it considered was "the posture in which the nonfederal claim is asserted." The *Finley* court stated:

> The most significant element of "posture" or of "context" in the present case (as in *Zahn*, *Aldinger*, and *Kroger*), is

precisely that the added claims involve added parties over whom no independent basis of jurisdiction exists.

*Id.* 109 S.Ct. at 603.

The Court said further that, even though the FTCA provided federal courts with exclusive jurisdiction, it was not enough alone to justify the extension of jurisdiction to a pendent party. It reasoned:

As in *Kroger,* the relationship between petitioner's added claims and the original complaint is one of "mere factual similarity," which is of no consequence since "neither the convenience of the litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction."

*Finley* at 606, quoting from *Owen v. Kroger,* 437 U.S. 365, 376–77, 98 S.Ct. 2396, 2403–04, 57 L.Ed.2d 274 (1978).

The second factor identified by the *Finley* Court was the text of the jurisdictional statute. The plaintiff in *Aldinger* brought her suit under 42 U.S.C. § 1983. The Court found that the jurisdictional statute under which suit was brought was 28 U.S.C. § 1343 because the United States had been excluded from liability in § 1983 actions. The Court found that jurisdiction under § 1343 did not reach defendants other than the United States. He refused to read the statute in a way to provide pendent jurisdiction over a party against whom plaintiff had a state claim.

The Supreme Court's resistance to pendent party jurisdiction was well summarized in *Finley.* There, the Court said:

All our cases—*Zahn, Aldinger,* and *Kroger*—have held that a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties. Our decision today reaffirms that interpretive rule; the opposite would sow confusion.

*Id.* 109 S.Ct. at 606.

The facts in the instant case do not support a claim of pendent party jurisdiction. Applying the *Kroger* factor analysis, as the Court did in *Finley,* makes clear that pendent party jurisdiction is improper. First, as in *Kroger* and *Finley,* the added claim, loss of consortium, involves a party, Mr.

Stallworth, over whom no independent basis of jurisdiction exists. Second, the relevant jurisdictional statute, 42 U.S.C. § 1983, does not reach Mr. Stallworth's state claim of loss of consortium. The text of that statute provides:

§ 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the *deprivation of rights, privilege,* or *immunities* secured by the Constitution and laws, shall be liable to the *party injured* in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. (Emphasis added.)

The statute provides redress to a party suffering injuries from a deprivation of any rights, privileges or immunities secured by federal law. It is Mrs. Stallworth who has allegedly suffered injuries based on such a deprivation. Mr. Stallworth's loss of consortium claim does not represent an injury based on a deprivation of his rights, privileges or immunities. Therefore, the text of the statute does not reach his claim.

Based on clear Supreme Court precedent, this court is unwilling to extend pendent party jurisdiction to Mr. Stallworth's loss of consortium claim. It was error for the trial court to do so.

## VI

For the reasons stated above, the judgment of the trial court is affirmed in its entirety as to Mrs. Stallworth, but is reversed as to Mr. Stallworth's estate for loss of consortium to the estate of Mr. Stallworth.

WELLFORD, Circuit Judge, concurring in part and dissenting in part:

I agree with Judge Gilmore's accurate exposition of pertinent facts in part I, and

with his conclusion in parts II and V. With regard to the resubmission of interrogatories to the jury, I concur in the finding of no error but note that the question at least to me is not so "clear" as it appears to the majority.

With respect to part III, were it not for the recent decision in *Molton v. City of Cleveland*, 839 F.2d 240 (6th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1345, 103 L.Ed.2d 814 (1989), by which we are bound because it involves a comparable fact situation, I would find for the defendant City of Cleveland. I note that *Molton* was the first decision of our court which determined that under Ohio law the city was vicariously liable for a tortious act of a police officer because such action was "not unexpectable." 839 F.2d at 249. *Molton* cited *Enghauser Mfg. Co. v. Ericksson Eng'g Ltd.,* 6 Ohio St.3d 31, 451 N.E.2d 228 (1983), as authority for the proposition which changed the law in Ohio existing since 1854 (in a non-police officer context) that sovereign immunity of a municipality was abolished for tortious actions of agents in the "performance" of municipal "activities." 451 N.E.2d at 232. It was not until July 1985, after the episode in question had occurred in the instant case, that vicarious responsibility of a municipality in Ohio for the single tortious act of a police officer was decided. *Longfellow v. City of Newark,* 18 Ohio St.3d 144, 480 N.E.2d 432 (Ohio 1985).[1]

There is a question, then, in my mind as to whether the Ohio law cited should be applied to this 1985 episode. *Molton,* however, without considering the retroactive effect of the change in the Ohio law heretofore mentioned, held that this Ohio law applied to a 1981 episode. Appellant City does not raise any contention about retroactive effect, and so I join the result

reached in part III based on changed Ohio law. I also find the amount of the damage in this case to be at the upper limits of reasonableness as to compensatory damages.

With regard to part IV dealing with allowance of prejudgment interest against the City, I cannot agree. *Molton v. City of Cleveland,* states the general rule:

Generally, prejudgment interest is not permitted under Ohio law where the claim is unliquidated—where damages were not readily ascertainable prior to trial. *Coal Resources, Inc. v. Gulf & Western Indus.,* 756 F.2d 443, 451 (6th Cir.1985).

839 F.2d at 250.

While the damages in this case were not "ascertainable prior to trial," and were clearly "unliquidated" in nature, interest on these damages may be granted under recent expressions of Ohio law. One would be hard pressed to find the City guilty of bad faith in denying liability in this case where a police officer engaged in a purely personal affair and had become involved in an altercation with a grandmother about moving her car. I conclude that the district court's findings to the contrary are not supportable.[2] *See Huffman v. Hair Surgeon Inc.,* 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985), where the court upheld prejudgment interest based on a finding that "[T]he trial court obviously did not abuse its discretion when, after conducting a hearing, it found appellee's *lack of good faith* well documented." 482 N.E.2d at 1252 n. 6 (emphasis added).

I would therefore find the award of prejudgment interest to be in error. I dissent, therefore, from the allowance of prejudgment interest in part IV.

---

1. This was a hotly contested 4 to 3 decision of the Ohio Supreme Court. Were I free to do so, I would join the reasoning of the minority and find the City not liable.

2. Three separate affidavits of various counsel for the City of Cleveland were filed which re-

flected their actions concerning offers of settlement, if any, made to the City. Plaintiff's counsel simply stated that he was "under the impression that the City of Cleveland has a policy of not attempting to settle cases like the case."